**ANDERSON v. POLK et al.   (No. 7662.)** *

(Court of Civil Appeals of Texas. San Antonio. Jan. 5, 1927. Rehearing Denied March 2, 1927.)

1. Pleading ⚖︎214(1)—Allegations of petition held taken as true on general demurrer, except as overcome by presumptions of law and facts within judicial knowledge.

Allegations of petition to have abandoned river bed surveyed and title declared to be in state must be taken as true as against general demurrer, except as they may be overcome by presumptions of law, uncovered and provoked by such allegations, or by extrinsic facts within judicial knowledge.

2. Mandamus ⚖︎154(4)—Mandamus petition to secure purchase of abandoned river bed as unsurveyed public school lands will be heard on merits only, where it shows land is part of public domain (Rev. St. 1911, art. 5436).

Petitioner, who complied with statute (Rev. St. 1911, art. 5436), in endeavor to purchase abandoned river bed as vacant or unsurveyed public school lands, is entitled to be heard on merits of petition for mandamus to compel survey of land, and for judgment decreeing title in state, only if pleading shows that land is part of public domain, and classed as unsurveyed public school land subject to sale by state.

3. Evidence ⚖︎11—Court judicially knows that San Antonio was established in 1717 or 1718, and received grant of land within its limits from King of Spain.

Court will take judicial notice that town of San Fernando de Bexar, now the city of San Antonio, was established in 1717 or 1718 by authority of the King of Spain, and that the city was endowed by grant of sovereign with lands embraced within its ancient limits not theretofore granted to others.

4. Municipal corporations ⚖︎221—City of San Antonio owned all land within corporate limits when channel of San Antonio river was changed (Sp. Laws 1903, c. 44).

Fee-simple title to all lands within corporate limits of San Antonio held to be in city at time channel of San Antonio river was changed, and land which was previously channel became surface land, in view of Sp. Laws 1903, c. 44.

5. Public lands ⚖︎206—Grant by King of Spain to city of San Antonio, of land within limits, held to include bed of San Antonio river (6 Gammel's Laws, p. 769).

Grant by King of Spain to city of San Antonio of land within its limits held to include bed of San Antonio river, though it was navigable stream, since owner of land on both sides of navigable stream owns bed subject to easement of navigation, and act incorporating city (6 Gammel's Laws, p. 769) gave it exclusive control of beds of streams within limits.

6. Navigable waters ⚖︎36(2)—Riparian owners hold title to bed of navigable stream to middle thread, subject to easement of navigation.

Owners of land contiguous to navigable streams hold title to bed of such streams to middle thread thereof, subject only to easement of navigation in public.

7. Navigable waters ⚖︎37(1)—Act empowering city to widen, deepen, or alter channels of streams held to give title to river bed (6 Gammel's Laws, p. 769).

6 Gammel's Laws, p. 769, by which enactment city of San Antonio was empowered to widen, deepen, or alter channels of streams to meet requirements of health, safety, and convenience of inhabitants, held to give title to bed of San Antonio river.

8. Evidence ⚖︎10(5)—It is common knowledge that San Antonio river follows winding course through city of San Antonio.

It is matter of common knowledge that waters of San Antonio river traverse devious course through heart of city of San Antonio.

9. Mandamus ⚖︎154(4)—One seeking mandamus must negative existence of facts which could deprive him of right to remedy asserted.

One invoking extraordinary remedy of mandamus is required to allege not only facts entitling him to relief sought, but to negative existence of facts which could deprive him of right to remedy asserted.

---

(291 S.W.)

**10. Mandamus ⟨Key⟩154(1)—Land alleged to be within corporate limits of San Antonio is presumed to be within limits of grant to city by King of Spain.**

Where petitioner for mandamus to compel survey of abandoned river bed, and for judgment decreeing title in the state, shows land to be within corporate limits of San Antonio it will be presumed to be within limits of grant of land to such city by King of Spain.

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Action by J. E. Anderson against Louis Polk praying for a writ of mandamus. The City of San Antonio was impleaded by Polk, a demurrer to the petition was sustained, and Anderson appeals. Affirmed.

Nelson Lytle, of San Antonio, for appellant.

T. J. Newton, Joseph Ryan, and Raymond Edwards, all of San Antonio, and Stewarts, of Galveston, for appellees.

SMITH, J. The appeal involves the status of land exposed by artificial and permanent changes in the channel of the San Antonio river within the corporate limits of the city of San Antonio. In the year 1914, according to the petition of the plaintiff below, the city of San Antonio diverted the waters of the river to a newly made channel, and filled the abandoned channel with soil to the level of the contiguous premises. By this process the course of the river was straightened, and in accomplishing this object the corporation but exercised an important function of municipal government. The title to the property thus converted into surface land is the subject of this litigation.

. This action was brought by J. E. Anderson, a resident citizen of Travis county, against Louis Polk, as county surveyor of Bexar county. Anderson alleged that, by reason of the diversion of the waters of the river, the abandoned river bed had thereby automatically become a part of the public domain of the state, and subject to purchase as vacant or unsurveyed public school land; that he desired to purchase the strip, and had complied with the law as a prospective purchaser. He prayed for a writ of mandamus to require Polk to survey the strip and return the field notes thereof into the general land office, to require Polk to implead the city of San Antonio as claiming the land, and for judgment decreeing the title to be in the state as vacant and unsurveyed public school land, and giving him the right to purchase it as such. This procedure is provided for in article 5436, R. S. 1911, and was properly pursued by Anderson. The city was impleaded by Polk, and a general demurrer was urged to Anderson's petition. The demurrer was sustained by the court below, Anderson declined to amend, the suit was dismissed, and Anderson has appealed.

[1] The purpose of the appeal being to test the sufficiency of plaintiff's petition as against the general demurrer, the allegations of fact in the petition must be taken as true, except as they may be overcome by presumptions of law uncovered and provoked by those allegations, or by extrinsic facts within judicial knowledge.

[2] The allegations in the petition show that appellant is entitled to exercise the right given by law to citizens to purchase vacant or unsurveyed public school lands, and that he has complied with the statutes in his endeavor to purchase the land in controversy. Having this right, and properly asserting it, appellant is entitled to be heard on the merits of his case if he has shown by his pleadings that the land is a part of the public domain, and in its present status classed as unsurveyed public school land subject to sale by the state through the procedure pursued by appellant.

[3] The town of San Fernando de Bexar now the city of San Antonio, was established in the year 1717 or 1718, by authority of the King of Spain, and at that time, or at least prior to 1733 or 1734, the city was endowed by grant of the sovereign with the lands embraced within the ancient limits of the municipality, and not theretofore granted to others. These may be said to be historical facts so well established as to entitle them to judicial notice. Lewis v. City of San Antonio, 7 Tex. 288; Dittmar v. Dignowitty, 78 Tex. 22, 14 S. W. 268.

[4] In the year 1837 the Congress of the Republic of Texas (1 Gam. Laws 1379) declared the citizens of San Antonio to be a body politic and corporate, defined the corporate limits of the city as embracing "all that tract of land originally granted to and composing said city, with its precincts," and empowered the city council to sell and alienate "such public lots or parcels of land as may lie within their jurisdiction, and to which there is no legal claimant or title." These provisions were re-enacted in substantially the same form by the Congress in 1842 (2 Gam. 704), and the same powers and privileges of the city were recognized or confirmed by the Legislature of the state in the Acts of 1855 (4 Gam. 301), of 1856 (Id. 550), of 1870 (6 Gam. 769), of 1876 (8 Gam. 1239), of 1889 (9 Gam. 1364), and of 1903 (Sp. Laws 28th Leg. p. 322, c. 44), constituting the present charter of the city.

By these several acts the Congress and the Legislature not only recognized and stabilized the facts of the grant, but confirmed it, and efficiently construed it into a grant to the city of the fee-simple title to all the land within its corporate limits which had not been previously appropriated to other purposes. It

is said by the Supreme Court in the Lewis Case that, conceding the fact of the grant, the act of the Congress of 1837 "attached to the said grant and rendered the same perfect, and conveyed the absolute fee to the city of San Antonio"; and in the Dittmar Case that this legislation "evidences clearly an intention that the city of San Antonio should hold in fee all lands within its ancient limits which had not before * * * become the property of individuals." We think the recited historical and legislative facts, and the construction thereof by the courts settle the conclusion that, at the time the strip in question was transformed from river bed to surface land, the fee-simple title to all the unappropriated land within the corporate limits of San Antonio was in the corporation, and the state has no claim thereto.

[5] This brings us to the claim of appellant that, notwithstanding the grant to the city, the title to the bed of the river has ever remained in the sovereignty, and that, when the river was diverted from its natural course, the vacated channel became a part of the unappropriated public domain, and subject to purchase by appellant as vacant and unsurveyed public school land. In this connection it was alleged by appellant that at this point the San Antonio river is more than 30 feet in width, and therefore a navigable stream within the contemplation of the statutes; that this status vested title to the bed of the river in the state. We overrule this contention for two reasons:

[6] First. The question of the character and extent of the rights of riparian owners to the waters and beds of navigable streams has been and seems yet to be a vexatious one in this country. In but few of its aspects has the question been satisfactorily settled in this or many other states. It is not our purpose to venture further into that question than to propound the proposition, generally, that the apparent weight of authority in this country supports the view that owners of land contiguous to navigable streams hold title to the bed of such streams to the middle thread thereof, subject only to the easement of navigation, which easement rests always in the public; when one person owns the land upon both sides of the stream, he owns the entire bed of the stream, subject to the same easement. And in the latter case, where the waters of the stream shift from one channel to another on his premises, the owner's title to the abandoned channel becomes absolute, and his title to the newly made channel becomes burdened with the easement of which the old channel has been relieved by the diversion. Such is the case made here, and, when the strip of land in controversy was converted from river bed to dry land, the only effect of the diversion was to shift the easement from the old to the new channel and render absolute the city's

title to the abandoned bed. The sovereignty, having granted to the city the fee-simple title to the lands, was not concerned in the process, and had no rights in the premises except to preserve and protect the easement of navigation, which followed the shifting course of the river. The question is ably and elaborately discussed and the authorities collated by Chief Justice McClendon in the recent case of Grubstake Ass'n v. State (Tex. Civ. App.) 272 S. W. 527. It is true that the Supreme Court has granted a writ of error in that case, which it has not yet decided, but it is difficult to conceive of a reversal of the Court of Civil Appeals' holding upon the question involved. We also adopt some of the authorities cited by appellee in this case. Jones v. Soulard, 65 U. S. (24 How.) 41, 16 L. Ed. 604; Donnelly v. U. S., 228 U. S. 243, 33 S. Ct. 449, 57 L. Ed. 820; Knight v. Land Ass'n, 142 U. S. 161, 12 S. Ct. 258, 35 L. Ed. 978; Rhodes v. Whitehead, 27 Tex. 304, 84 Am. Dec. 631; Baylor v. Tillebach, 20 Tex. Civ. App. 490, 49 S. W. 720; Lux v. Haggin, 69 Cal. 255, 4 P. 919, 10 P. 712.

[7] Second. In the Act of August 13, 1870, incorporating the city of San Antonio (6 Gam. 769), the Legislature granted the city certain powers, among them being the power—

"to provide measures to keep the waters of the river and streams pure; to remove all obstruction or dams in said river or streams within the limits of the city; to widen and deepen the channels of said river and streams; to prevent overflows; to alter and establish the channels of any streams, ditches or water courses within the limits of said city when the health, safety or convenience of the city may require such to be done."

By this provision the Legislature expressly granted to the city complete, and therefore, by implication, exclusive, control over the channels and beds of the streams within the corporate limits, with express power to widen, deepen, or otherwise alter the channels of those streams to meet the requirements of the health, safety, and convenience of the inhabitants of the city. In other words, all the power and discretion possessed by the Legislature relating to the control of the river and its course were delegated to the city. If any act in addition to those already named were needed to vest or confirm the title of the city to the bed of the river, we think this act conclusively serves that purpose. For, what use could the city make of the granted power and control over the river and its location, course, and channel, if the ownership of the river bed be held or retained by the state?

[8] It is perhaps a matter of common knowledge that the blue waters of the San Antonio river traverse a devious course through the very heart of the historic "mother city," and, while it is true that in its capricious windings and unexpected turns

the river is and has ever been the object of affectionate admiration from resident and visitor alike, yet it is a historical fact that in rare cases of high floods it has been a menace to life, health, and property because of those very inconsistencies in its course. To control it, to lessen these dangers from it, to preserve and cultivate the grace and charm of it, are responsibilities resting upon the city's governing board, to whom the state has delegated all the power and authority necessary to accomplish those ends—the power to widen, deepen, and alter the natural channel of the stream. The grant of these powers, coupled with the duty of exercising them, carries with it by conclusive implication the ownership of the bed of the stream, for without such ownership the grant would be futile and to no purpose.

[9, 10] The point is made that the stricken pleading does not disclose that the strip of land in controversy is situated within the limits of the original and confirmed grant to the city. We conclude, however, that, as appellant in his petition invokes the extraordinary remedy of mandamus, he is required to allege, not only facts which affirmatively entitle him to the relief sought, but to negative the existence of facts which could deprive him of the right to the remedy asserted. And, in applying this rule to his petition, it will be presumed that, as the land in controversy is shown by appellant to have been situated within the corporate limits at the time it was reclaimed, it was within the limits of the grant; there being no allegations in the petition negativing that important fact.

We hold, in conclusion and by way of summary, that by giving effect, as we have sought to do, to the presumptions of law, the historical facts, the legislative acts, and the construction thereof by the Supreme Court, the allegation in appellant's petition that the abandoned river bed became a part of the public domain and subject to purchase as vacant and unsurveyed public school lands, is overcome. And in consequence we hold that the trial court properly sustained the general demurrer to the petition of the plaintiff below.

The judgment is affirmed.