J. E. ANDERSON v. LOUIS POLK ET AL.

No. 4846.   Decided June 22, 1927.
(297 S. W., 219).

*G. B. Smedley* and *Nelson Lytle,* for plaintiff in error.

A purchaser of public school land from the State who complies with the law governing the sale of same by making application for purchase and attempts to have same surveyed, and is ready, able and willing to complete such purchase and tenders performance, establishes and fixes a preference right to make such purchase which the State must recognize. Jumbo Cattle Co. v. Bacon & Graves, 79 Texas, 12; Metzler v. Johnson, 20 S. W., 116; Watts v. Wheeler, 30 S. W., 297; State v. Rogan, 54 S. W., 1016; Harper v. Terrell, 73 S. W., 949; Tatum v. Kincannon, 119 S. W., 113; Houston Oil Co. v. McGrew, 176 S. W., 45; Stockwell v. Robison, 201 S. W., 1156; Anderson v. Robison, 267 S. W., 456; Cox v. Robison, 127 S. W., 806.

Where plaintiff in his sworn petition averred positively that the land for which he made application was then a portion of the unsurveyed land belonging to the public free school land and subject to sale, that his application was the first application covering said land, and that there were no prior applications pending, and that plaintiff was qualified under the law to file such application, there was and could be no presumption of law that such land was not vacant land merely because situated within the limits of the City of San Antonio; and it would be a question of fact to be established upon the trial as to whether or not the land in question was covered by a prior Spanish grant, and the boundaries, terms and conditions of such grant, and from such proof the court would then determine whether or not under the laws then existing the land composing the bed of a navigable stream passed to the adjoining land owners under the terms of the grant, or was reserved to the government. Dittmar v. Dignowitty, 78 Texas, 24; Holmes v. Anderson, 59 Texas, 482; Galveston Ry. v. Stanley, 166 S. W., 12; City of Paris v. Tucker, 104 S. W., 1046; Altgelt v. Gutzeit, 187 S. W., 220; Yancey v.

Norris, 27 Texas, 49; Grimes v. Bastrop, 26 Texas, 315; Taylor v. Watkins, 26 Texas, 699; Paschal v. Daingerfield, 37 Texas, 303; Walker v. Caradine, .78 Texas, 492; Herndon v. Vick, 89 Texas, 474–5.

Under the Spanish and Mexican law, the title to rivers and their beds was reserved to the government, and when the waters of the San Antonio River were diverted to a new channel, the old channel as the property of the State, became vacant and subject to location as part of the public school land. Roman Law: Gould on Waters, Sec. 47; Farnham on Water and Water Rights, Vol. 1, Sec. 49; Galveston v. Menard, 23 Texas, 349, 396; Landry v. Robison, 110 Texas, 295, 219 S. W., 819; Canal Appraisers v. The People, 17 Wend. (N. Y.), 588; People v. Page, 39 N. Y. Appellate Div., 110; Smith v. City of Rochester, 92 N. Y. 463, 44 Am. Rep., 401; People v. Canal Appraisers, 33 N. Y., 461; Cox v. State, 3 Blackford (Ind.), 199. Spanish Law: Gammel's Laws of Texas, Vol. 1 (Introduction by C. W. Rains); Sayles' Early Laws of Texas, Sec. 4, p. 153; Allen v. West Lumber Co., 244 S. W., 499; Las Siete Partidas, translated from the Spanish by L. Moreau Lislet and Henry Carleton (1820); Law 15, Title 1, Partida 1, Vol. 1, p. 7; Law 31, Title 28, Partida 3, Vol. 1, p. 348 (Hall's Mexican Law, Sec. 1478); Law 32, Title 28, Partida 3, Vol. 1, p. 349 (Hall's Mexican Law, Sec. 1479); Law 27, Title 28, Partida 3, Vol. 1, p. 346 (Hall's Mexican Law, Sec. 1474).; Law 29, Title 28, Partida 3, Vol. 1, p. 348 (Hall's Mexican Law, Sec. 1476); Law 26, Title 28, Partida 3, Vol. 1, p. 346 (Hall's Mexican Law, Sec. 1473); Law 28, Title 28, Partida 3, Vol. 1, p. 347 (Hall's Mexican Law, Sec. 1475); Law 30, Title 28, Partida 3, Vol. 1, p. 348 (Hall's Mexican Law, Sec. 1477); Laws 2, 3 and 6, Title 28, Partida 3, Vol. 1, p. 337 (Hall's Mexican Law, Sec. 1468); Morgan v. Livingston, 6 Martin (La.), 224, 229, 231, 246; O'Fallon v. Daggett, 4 Mo., 343, 29 Am. Dec., 640; Lorman v. Benson, 8 Mich., 18, 77 Am. Dec., 435; Schmidt on the Civil Law of Spain and Mexico, Arts. 4, 179, 180; Walton's Civil Law in Spain and Spanish America (1900), Art. 407; Hamilton's Mexican Law (1882), Arts. 8 and 9; Wheless' Compendium of the Laws of Mexico (1910), (Preface); Civil Code of Louisiana, E. Johns & Co. (1838), Sec. 444; Escriche's Opinions, Hall's Mexican Law, Secs. 1409, 1406, 1388. Road Cases: Mitchell v. Bass, 26 Texas, 372; 33 Texas, 259; Renthrop v. Bourg, 4 Martin (La.), 97, 138; Dunham v. Williams, 37 N. Y., 251; Mott v. Clayton, 41 N. Y. Supp., 87; Caminez v.

Goodman, 104 N. Y. Supp., 68; Pooler v. Sammett, 115 N. Y. Supp., 578; Schaeffer v. Hilliker, 124 N. Y. Supp., 1014; Paige v. Schenectady Ry. Co., 178 N. Y., 102, 70 N. E., 213. Statutes and Laws of Mexico and Texas: Decrees of Coahuila and Texas, No. 190, Art. 29 (Paschal's Digest, 5th Ed., Art. 697); (Laws of Texas, Vol. 1, pp. 299, 302); Decrees of Coahuila and Texas, No. 272, Art. 22 (Paschal's Digest, 5th Ed., Art. 729); (Laws of Texas, Vol. 1, pp. 357, 360); Constitution of Republic of Texas, 1836 (Laws of Texas, Vol. 1, p. 1077); Act of June 12, 1837, Sec. 2 (Laws of Texas, Vol. 1, p. 1323); Act of December 14, 1837, Secs. 21, 42 (Laws of Texas, Vol. 1, p. 1404); (Paschal's Digest, 5th Ed., Arts. 4529, 4530); Mexican Code of 1871, Art. 802 (Hall's Mexican Law, Sec. 1620); Mexican Code of 1871, Art. 897 (Hall's Mexican Law, Sec. 1698); Phillips v. Ayres, 45 Texas, 601; City of Austin v. Hall, 93 Texas, 596, 57 S. W., 563; Siddall v. Hudson, 201 S. W., 1029, 206 S. W., 381.

The Act of August 13, 1870, incorporating the City of San Antonio (6 Gam. 769) granting the City of San Antonio the power to provide measures to keep the waters of the river and streams pure; to remove all obstructions or dams in said river or streams within the limits of the city; to widen and deepen the channels of said river and stream; to prevent overflows; to alter and establish the channels of any streams, ditch or water course within the limits of said city, when the health, safety or convenience of the city may require such to be done, does not attempt to divest the title to land within the City of San Antonio and title to which land was then vested in the State of Texas, such Act by its terms merely conferring upon the City of San Antonio certain definite powers therein expressed, and this is particularly true of land which ceased to be and was no longer a part of the channel or bed of the river and which therefore would no longer come within the terms of this statute at the time application to purchase same from the State was made. Act of August 13, 1870 (6 Gam., p. 769).

The land in controversy belonging to the public school fund, the legislature is without authority to give same to the City of San Antonio, and all statutory provisions attempting so to do are violative of the Constitution and void. Art. 7, Sec. 4, Texas Constitution.

Under the allegation in the plaintiff's petition that the land described therein was unsurveyed public school land belonging to the State of Texas and under the allegation in said petition that the

land in question was a portion of what was formerly the bed of the San Antonio River, which river was and is a navigable stream of more than thirty (30) feet in width and the bed of which belonged and belongs to the State of Texas, and in the absence of any allegations or proof as to the nature or extent of title granted to the City of San Antonio of the land within the corporate limits of the city, it should be held, as a matter of law, that the title to the bed of the river is in the State of Texas. Petty v. City of San Antonio. 181 S. W., 224.

The grant made by Spain to the City of San Antonio was not a grant of the fee title, but was merely an appropriation of the land for the use of the inhabitants of the city, the fee title remaining in the sovereign; and if the Act of 1837 and subsequent Acts were intended to give to the city the fee title to the land which had been within the bounds of the original grant such Acts must be construed together with and in harmony with the Act of 1837 (now Art. 5302) reserving the beds of streams to the sovereign; and the purpose and effect therefore, of these Acts were to give the city title to the land, but not to the bed of the river. Dittmar v. Dignowitty, 78 Texas, 27, 14 S. W., 268; Lewis v. San Antonio, 7 Texas, 288; State v. Gallardo, 106 Texas, 274, 166 S. W., 369.

Neither the trial court nor the Court of Civil Appeals could know judicially that the portion of the bed of the San Antonio River in controversy here was within the bounds of the land granted or confirmed by the Republic and the State to the City of San Antonio; and under the rule that in passing upon the general demurrer the facts alleged must be taken as true, the allegations that the land in controversy was and is the property of the State of Texas and a portion of the unsurveyed land belonging to the public free school land can not be overturned by presumption. Dittmar v. Dignowitty, 78 Texas, 27, 14 S. W., 268; Edwards v. Davis, 3 Texas, 321.

*T. J. Newton,* County Attorney, and *Maco Stewart,* for defendant in error Polk; *Joseph Ryan,* City Attorney, for defendant in error City of San Antonio; *Raymond Edwards,* for defendant in error Silveus.

The land involved in this suit is not public land belonging to the public school fund, having been vested in the City of San Antonio by grant from the Crown of Spain and its title thereto validated and confirmed by the Congress of the Republic of Texas and subsequently by the State of Texas. Act of Congress of Republic of Texas, Dec. 14, 1837 (Gammel's Laws, Vol. 1, p. 1379) ; Act of

Congress of Republic of Texas, January 14, 1842 (Gammel's Laws, Vol. 2, p. 704) ; Act of Legislature of Texas, November 26, 1855 (Gammel's Laws, Vol. 4, p. 301) ; Act of Legislature of Texas, July 17, 1856 (Gammel's Laws, Vol. 4, p. 550) ; Act of Legislature of Texas, August 13, 1870 (Gammel's Laws, Vol. 6, p. 769) ; Act of Legislature of Texas, August 7, 1876 (Gammel's Laws, Vol. 8, p. 1239) ; Act of the Twenty-eighth Legislature of Texas (Sec. 67, City Charter of San Antonio) ; Act of Legislature. of Texas, 1889 (Gammel's Laws, Vol. 9, p. 1364) ; Lewis v. City of San Antonio, 7 Texas, 287; Tex.-Mex. Ry. Co. v. Locke, 74 Texas, 370; San Felipe de Austin v. State of Texas, 111 Texas, 108, 229 S. W., 845; Dittmar v. Dignowitty, 78 Texas, 22; Rhodes v. Whitehead, 27 Texas, 304; Baylor v. Tillebach, 49 S. W., 720; Taylor v. Hoya, 29 S. W., 540; Grubstake Inv. Assn. v. State of Texas, 272 S. W., 527; Gonzales v. Ross, 120 U. S. 605; Jones v. Soulard, 65 U. S., 41, 16 L. Ed., 604; Donnelly v. United States, 228 U. S., 242, 57 L. Ed., 820; French v. Fyan, 93 U. S., 169, 23 L. Ed., 812; Knight v. United Land Assn., 142 U. S., 161, 35 L. Ed., 978 ;. San Francisco v. LeRoy, 138 U. S., 656; Leoma v. Stevenson, 40 Fed., 356; Lux v. Haggin, 10 Pac., 712; Crandall v. Wood, 8 Cal., 141; Administrator of Gavit v. Chambers, 3 Ohio, 496; Trustees, etc., v. Meecox, 22 N. E., 391 (N. Y.) ; Am. Ann. Cas., 1916 B, p. 562; 27 R. C. L., pars. 280–1, p. 1371.

The land which plaintiff seeks herein to have the county surveyor mandamused to survey and to purchase from the State is not vacant and unsurveyed land under the terms and within the meaning of the statute under which his suit is predicated. De Merit v. Robison, 102 Texas, 358, 116 S. W., 796; Lewis v. City of San Antonio, 7 Texas, 287; Roberts v. Terrell, 101 Texas, 577, 110 S. W., 733; State v. Delesdenier, 7 Texas, 76; Day, etc., v. State, 68 Texas, 526; Hughes v. State, 41 Texas, 10; Wilcox v. Jackson, 13 Peters, 498; Morris v. United States, 172 U. S., 194, 43 L. Ed., 947; Newhall v. Sanger, 2 Otto, 761, 23 L. Ed., 769; Bardon v. Nor. Pac. R. R., 145 U. S., 535, 36 L. Ed., 806; Leavenworth v. U. S., 92 U. S., 733, 23 L. Ed., 640; Scott v. Carew, 196 U. S., 104, 49 L. Ed., 405; M. K. & T. v. Roberts, 152 U. S., 112, 38 L. Ed., 377; Doolen v. Carr, 125 U. S., 618, 31 L. Ed., 844; Stockley. v. Cissna, 119 Fed., 814.

The land involved in this suit being titled to the City of San Antonio and being claimed by it and being located in Bexar County, is not subject to location and is not subject to purchase by plaintiff under the laws of Texas. Act of Legislature, February 16, 1852

(Gammel's Laws, Vol. 3, p. 986) ; Trueheart v. Babcock, 51 Texas, 177.

It appearing from plaintiff's petition that the land involved in this suit is situated in and claimed by the City of San Antonio, that the Land Commissioner of the State of Texas refused to recognize such land as unsurveyed land, that the County Surveyor of Bexar County, Texas, refused to survey same, that same was formerly the bed of the San Antonio River, made dry land by the City of San Antonio by artificial means, plaintiff failed to allege facts that negatived the claim and ownership thereof by the City of San Antonio and other abutting owners to said former river bed, and therefore failed to conclusively show that said land was vacant land, subject to purchase by him under the provisions of the statute on which his suit is based. R. R. Co. v. Randolph, 24 Texas, 317; Winder v. Williams, 23 Texas, 601; Moore v. Rogan, 96 Texas, 375, 73 S. W., 1; Johnson v. Elliott (T. C. A.), 168 S. W., 968.

Plaintiff did not acquire any right or title to the land involved in this suit by his attempt to purchase same as alleged and pursued by his petition herein, and, if it be that any title at such time was vested in the State, the said land has now been withdrawn from the unsurveyed land of the State, and any right the State had thereto has now been released to the City of San Antonio by proper and legal Act of the Legislature of Texas, to-wit: Chap. 155, Thirty-ninth Legislature. Act of 39th Legislature, March 30, 1925, Chap. 155, pp. 366–7; Taylor v. Hoya, 29 S. W., 540.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

Plaintiff in error Anderson sued defendant in error Polk as County Surveyor of Bexar County to require him, by mandamus or other appropriate writ, to survey a tract of land, which was a part of the former bed of the San Antonio River, and to return field notes to the General Land Office of Texas, in order that plaintiff in error might complete an application to purchase said tract as unsurveyed public school land. Plaintiff in error averred that it was the duty of the county surveyor to implead the City of San Antonio, a municipal corporation, because it was claiming the tract adversely to the State. After the county surveyor had impleaded the defendant in error, City of San Antonio, both the city and the county surveyor presented general demurrers to the petition of plaintiff in error, which were sustained by the District Court. On the refusal of plaintiff in error to amend his petition, his suit was dismissed. On

appeal, the Honorable Court of Civil Appeals at San Antonio affirmed the judgment of the District Court. 291 S. W., 1112.

The petition of plaintiff in error, after naming Louis Polk defendant and alleging that defendant had been, since July, 1924, the County Surveyor of Bexar County, continued the following averments:

First: The qualification of plaintiff in July, 1924, to purchase the land sued for.

Second: The delivery by plaintiff to the Commissioner of the General Land Office of Texas, about July 9, 1924, of an application of inquiry, there being no prior application, for the purpose of purchasing said land, under Art. 5432 of the Revised Civil Statutes as amended by Chap. 163 of the Acts of the Regular Session of the Thirty-sixth Legislature, said tract being described in said application as follows:

"Situated in Bexar County, Texas, in the City of San Antonio, Texas, being a portion of what was formerly the bed of the San Antonio River   *   *   *   more particularly described as follows: Adjoining what is known as city blocks Nos. 118 and 186, and lying north of and adjoining the north line of Nueva Street and west of and adjoining the west line of Garden Street, beginning at a point near the north line of Nueva Street where the diversion dam is intersected by the south bank of the abandoned river bed, thence following the said bank of the abandoned river bed up said river bed to a point where the said bank of the abandoned river bed intersects the more northern of the two diversion dams constructed for the straightening of the river at said point; thence following said diversion dam for a southeastern direction across the old river bed to the opposite bank of said old river bed; thence following the said bank of said old river bed down said old river bed with said bank to the point where said bank of the old river bed intersects the more southern of the two diversion dams; thence following said diversion dam across the said abandoned river bed to the place of beginning."

Third: The tract sued for "was at the time said application was written and filed, and is now, a portion of the unsurveyed land belonging to the public free school land which is subject to sale under Art. 5432, and that said land was originally a part of the bed and channel of the San Antonio River, which river was, and is, a navigable stream of more than thirty feet in width, and the bed of which stream belonged, and belongs, to the State of Texas; and that the portion of said river bed described in the said application of inquiry is now abandoned and the water of the river does not and can not

flow through it, and could not and was not flowing through it when said application of inquiry was made and filed and at the time application of inquiry was made and filed said portion of said river bed had become and was permanently land.

"That said river bed became permanently dry land on or about January 1, 1914, by reason of the changing and shortening of the channel of the San Antonio River by the City of San Antonio; said city did by artificial means prepare a new channel and cause the water of the San Antonio River to be diverted from said former river bed to the new channel and did then fill in with earth the former river bed, making the same level with the land contiguous thereto; all as more fully shown by the block maps and plats in the offices of the City Assessor and City Engineer of the City of San Antonio."

Fourth: The acting Commissioner of the General Land Office advised plaintiff, by letter dated July 16, 1924, "that said tract of land hereinbefore described was not vacant," and thereby the Commissioner "declined to recognize the existence of the area hereinbefore described as public school land, and refused to authorize plaintiff to have a survey made, for the purpose of purchasing it as public school land."

Fifth: But for the Commissioner's action, plaintiff would have taken all steps to perfect his purchase, as he became entitled to do under Art. 5432; and, at the time he filed his application, and since, he has always been ready, willing, and able to make all payments and do all things necessary to perfect his purchase.

Sixth: The City of San Antonio, a municipal corporation, in the County of Bexar, State of Texas, is the claimant of said land within the meaning of said Art. 5432, and that said City of San Antonio is claiming said land adversely to the State of Texas and adversely to the plaintiff, and that it is the duty of the surveyor to implead the City of San Antonio in this suit.

Seventh: Plaintiff prayed "that defendant be cited to appear and answer this suit and that said defendant implead the City of San Antonio as a defendant herein and also implead any other person or corporation who may be claiming said land or any part thereof adversely to the plaintiff or adversely to the State of Texas, and that on final hearing plaintiff have judgment against all of the defendants adjudging and decreeing that the said land is public school land and unsurveyed public school land and is subject to sale under said Art. 5432, and that it be further adjudged and decreed that the plaintiff has fixed a right to purchase the said land under said

article, by taking the several steps therein provided to be taken and that the plaintiff be permitted to file a formal application with the defendant, the said county surveyor, for a survey of said land and that said defendant, the county surveyor, be ordered and directed to make a survey of said land for the plaintiff, in accordance with said law and to prepare proper field notes thereof and to deliver the same to the plaintiff for filing in the general land office, and that it be adjudged that the plaintiff has fixed a right to purchase the said land against any and all defendants in said suit and against all other persons, and that writ of mandamus issue against said defendant, the county surveyor, and such other writs as may be appropriate to enforce the judgment of the court and that plaintiff have judgment for his costs and for general and special relief."

In addition to the facts averred by plaintiff in error, the courts will take judicial knowledge of certain facts disclosed by Texas history and by public statutes. Dobbin v. Bryan, 5 Texas, 285; Flores v. Hovel, 125 S. W., 610; Knight v. U. S. Land Assn., 142 U. S., 161, 35 L. Ed., 974.

Among facts thus disclosed are the following:

San Antonio, then called San Fernando de Bexar, was established in the early part of the eighteenth century during the days of Spanish sovereignty, and a grant of land was then made by Spain to said city. Dittmar v. Dignowitty, 78 Texas, 26, 14 S. W., 268.

The Republic of Texas recognized the validity of the grant from Spain and confirmed it by an Act of Congress, approved December 14, 1837. The Act provided that the bounds of the city "shall include and comprehend all that tract of land, originally granted to and composing said city, with its precincts." The Act recognized the right of the city "to sell and alienate such public lots or parcels of land as may lie within their jurisdiction and to which there is no legal claimant of title." 1 Gammel's Laws of Texas, pp. 1379, 1380, 1381.

This Act was construed by this court as passing a title in fee to land within the boundaries of the grant. On this subject, the court, speaking through Chief Justice Stayton, declared: "Legislation since this county passed from Spanish dominion evidences clearly an intention that the City of San Antonio should hold in fee all lands within its ancient limits which had not before that period become the property of individuals." Dittmar v. Dignowitty, 78 Texas, 27.

In 1903 the Legislature of Texas passed Chap. 44 of the Special Laws of the Twenty-eighth Legislature. Sec. 125 declared the

chapter to be a public Act and required all courts to take judicial notice of its provisions. Sec. 1 declared that the inhabitants of the City of San Antonio "shall continue to be" a body politic and corporate, under the name "City of San Antonio." Sec. 2 provided, "The bounds and limits of said city, within which said corporation shall have jurisdiction shall include six square miles, of which the sides shall be equi-distant from what is known as the cupola of the cathedral of San Fernando, and three miles therefrom, with lines running east, west, north, and south, which bounds shall be ascertained and established under the direction of the city council." Sec. 67 authorizes the city "to provide measures to keep the waters of the river and streams pure, to remove all obstructions or dams in said river and streams within the limits of the city, to widen and deepen the channel of said river and streams, to prevent the erection of factories or establishments on the banks of any stream or ditches which will befoul or make impure the waters of such river or ditches; *to alter* and establish *the channels of any stream,* ditches *or water courses within the limits of the city* when the health, safety or convenience of the city requires such to be done." 12 Gammel's Laws of Texas, pp. 322, 335. Other Acts of the Legislature, referred to in the Act of 1903, as far back as 1856, recognized the City of San Antonio as having substantially the same boundaries as are fixed in the 1903 Act, and conferred similar powers on the city over the river and its channels to those conferred by the 1903 Act. 4 Gammel's Laws of Texas, pp. 550, 551; 6 Gammel's Laws of Texas, pp. 762, 769.

Viewing the allegations of the plaintiff in error's petition in the light of the above recited facts disclosed by the State's history and legislation, it is evident that plaintiff states no facts whatever to rebut the finding and conclusion of the Land Commissioner that the land in controversy was not vacant and was not subject to sale to plaintiff in error, unless they be the following:

First: That the land was situated within the City of San Antonio and was delineated on maps in the offices of the city assessor and the city engineer.

Second: That the City of San Antonio claimed the land under such a grant as would pass title to the city superior to any title remaining in the State, and superior to any title which could be acquired from the State by plaintiff in error.

Third: That the city had so filled and changed the channel of the river in 1914 as to make the area in controversy dry land, which it was authorized to do only within the city's limits.

Fourth: That the land applied for was a part of the former bed of the San Antonio River, which was a navigable stream more than thirty feet in width, and that no one had preceded plaintiff in seeking to purchase such land.

Bearing in mind that the one obstacle to the survey sought by plaintiff in error, according to his own petition, was the ruling of the Land Commissioner that the land in controversy was not subject to sale by the State, if the Commissioner's ruling would be upheld by the location of the land within the grant from Spain to San Antonio, it must be presumed that the land so lies. To indulge that presumption is but to apply the familiar principle that the law presumes that a public official has rightly performed his duty. Byers Bros. v. Wallace, 87 Texas, 507; Shepard v. Avery, 89 Texas, 306; Clements v. Robison, 111 Texas, 456. Especially significant is the failure of plaintiff in error to plead so easily ascertainable a fact as the situation of the land with respect to the limits of the city, if that would establish his right to the mandamus. For the governing rule was stated years ago by Mr. Justice Roberts in the following words:

"The rules of pleading as applicable to the remedy of mandamus, require the right of the plaintiff to be stated *unreservedly*, fully and clearly. In England, the right is shown in the affidavit offered on the motion in support of the rule, and there it is laid down that 'the affidavit should also anticipate every possible objection or argument in fact, which it may be expected will be urged against the claim.' 1 Chit. Gen. Pr., 808. The rule as laid down by the Chief Justice is that 'the circumstances under which the applicant claims the right should be positively and distinctly stated, *and objections which might be anticipated should be met and answered.*' Cullem v. Latimer, 4 Texas, 331; Comr. of Gen. Land Office v. Smith, 5 Texas, 480; Arberry v. Beavers, 6 Texas, 473. The object of such strictness is that the court shall be fully satisfied of the propriety of the exercise of this extraordinary remedy, in requiring the officer to do what, notwithstanding his official obligations, he has refused to do." Houston Tap & Brazoria R. Co. v. Randolph, 24 Texas, 333.

We are all the stronger impelled to consider the land within the grant to the city because that seems almost the necessary consequence of the allegations of the petition after discarding pure conclusions of law.

Treating the tract in controversy as lying within the grant to the city, the authorities are agreed that plaintiff in error shows no right

to recover by merely pleading that such tract has been reclaimed from the bed of a navigable river.

We have already shown that this court decided in Dittmar v. Dignowitty, supra, that the City of San Antonio acquired a fee title to the land within the bounds of the Spanish grant, except portions previously titled, under the law governing that grant and subsequent laws of the Republic and of the State.

The Supreme Court had long before determined in an elaborate opinion of Judge Roberts, in Galveston v. Menard, 23 Texas, 349, 393, that title would pass under a grant from the government to land covered by the tide water of a navigable bay. In his opinion for the court, Judge Roberts said: "Whether, then, this legislative grant be considered with reference to the civil law which was in force in Texas in 1836, or to the common law, to which her people were most accustomed, it must be held that the government had the power to make it."

This opinion recognizes that greater certainty is required in the terms of a grant to pass title to the soil of navigable rivers than to pass upland, saying: "The true reason for requiring a more certain and specific intention to a grant, in the case of lands covered by tidewater, connected with bays and other navigable streams, than in case of land not so covered, is believed to be, not any difference in the degree of right, possessed by the sovereign power of the state; but the difference in the character of the property, in its relation to, and connection with, other rights, such as of navigation, of fishing, etc., which may be, and usually are, enjoyed in common by all the people of a State; and which are usually kept continually under the protection of the government, directly or indirectly." Galveston v. Menard, 23 Texas, 397.

The Galveston Court of Civil Appeals, in an excellent opinion by Chief Justice Garrett, held that a tract within the old Spanish grant to Nacogdoches, which was quite similar to the grant to San Antonio, was not "unappropriated, public land," and that an action seeking to compel the county surveyor to receive and file an application to purchase such tract was rightly dismissed on general demurrer. Taylor v. Hoya, 9 Texas Civ. App., 312, 29 S. W., 540.

Baylor v. Tillebach, 20 Texas Civ. App., 490, 49 S. W., 722, declares it to be well established that the sovereign can grant the soil beneath navigable public waters.

Almost the same question raised by plaintiff in error was presented in the case of Knight v. U. S. Land Association, 142 U. S., 161.

In that case, the defendant claimed that the premises in controversy were a part of the pueblo of San Francisco and that the grant to the pueblo from Spain or Mexico had been later confirmed by the United States. The plaintiff asserted that the premises "were below the line of ordinary high-water mark at the date of the conquest of California from Mexico and therefore, upon the admission of the State into the Union in 1850, enured to it in virtue of its sovereignty over tide lands," and had since passed to plaintiff by regular mesne conveyances under patent from the State of California. In upholding the title of defendant under the grant to the pueblo of San Francisco, the Supreme Court of the United States, speaking through Mr. Justice Lamar, said that even if the lands in controversy were tide lands, this "could in no way affect the rights of the pueblo. Its rights were dependent upon Mexican laws, and when Mexico established those laws she was the owner of the tide lands as well as uplands, and could have placed the boundaries of her pueblos wherever she thought proper." Further, the court said the doctrine that the United States acquired title to tide lands on acquisition of Mexican territory, "does not apply to lands that had been previously granted to other parties by the former government, or subjected to trusts which would require their disposition in some other way." In a concurring opinion, Mr. Justice Field said: "Mexico owned the tide lands as well as the uplands, and it was, of course, in her power to make such disposition of them in the establishment and organization of her pueblos as she may have judged expedient." 142 U. S., 202.

We think it cannot be doubted, in view of the principles announced in the foregoing authorities, that plaintiff in error wholly failed to plead facts sufficient to negative that title had passed out of the Spanish government to the land granted to San Antonio and confirmed by the Texas Republic and State. Texas Mexican Ry. Co. v. Jarvis, 80 Texas, 460, 466, 467, 15 S. W., 1089. If title did so pass out of the Mexican government, none is held by the State subject to purchase by plaintiff in error.

The principle adverted to in the opinion of the Court of Civil Appeals as to where title to a river bed was vested under Spanish, Mexican, or Texan grants of land bordering on a navigable river, has no application to this case. Nobody alleges that a grant was made at any time bordering on the San Antonio River adjacent to the tract sued for. The action of the Commissioner of the General Land Office, in holding that the land in controversy was titled land

raises the presumption that it was embraced within the boundaries of a valid grant, which presumption is greatly strengthened, as we have said, by plaintiff in error's allegations and the facts within our judicial knowledge. But, as stated, no question is raised or presented by this record as to the rights of mere riparian proprietors in beds of navigable streams under the laws of Spain, Mexico, or Texas.

Nor are we concerned here with the character of right or title held by San Antonio under the ancient grant to part of the river bed. It suffices to uphold the action of the courts below in declaring the petition bad on general demurrer to say that the specific facts plead by plaintiff were wholly inadequate to overturn the action of the Commissioner of the General Land Office. So long as the Commissioner's act appears to have been lawful, no mandamus will issue against the county surveyor. As said by Chief Justice Wheeler in Winder v. Williams, 23 Texas, 603: "To entitle the plaintiff to a mandamus against the surveyor it devolved on him to show * * * that there was no impediment to the making of the survey. This his petition failed to show."

Nothing is better settled in Texas than that plaintiff in error can not substitute bald conclusions of law for essential averments of fact. Hence, he can not be awarded the mandamus on the mere repeated statement of the conclusion of law that the land he wants surveyed was part of the State's unsurveyed public school land.

Corpus Juris, Vol. 38, under the title "Mandamus," Sec. 578 (3), p. 863, says, "it is very generally held bad pleading * * * to allege a mere conclusion of law as distinguished from the facts giving rise to such conclusion."

In the leading mandamus case of Arberry v. Beavers, 6 Texas, 473, 474, the court said: "The petition alleges, in general terms, that the election was duly holden, and the returns thereof made in accordance with the laws of the State, regulating elections. But when it proceeds to specify the particular returns which were not received and counted, it states only that they were made within the time prescribed by law; but not that they were made in conformity to the requirements of law. And if it did, in terms, so state, it would not be sufficient; especially in a case of this character, where greater certainty of pleading is required, than in ordinary actions. (Cullem v. Latimer.) *The pleader ought to state, not legal deductions and conclusions merely, but the facts of his case.*"

The Supreme Court refused to grant a writ of error to review the decision of the Court of Civil Appeals in the case of Wilson v. Bristley, 13 Texas Civ. App., 200, 35 S. W., 838. In that case a demurrer was held to have been properly sustained to a petition seeking a mandamus to compel the officers of the town of Liberty to declare the result of a certain election. The petition showed on its face that the city had a superficial area of 27.8 square miles. It contained no averments of fact as to whether the town contained more or less than ten thousand inhabitants, nor of any other facts which would make valid a municipal corporation embracing the area stated. However, the petition did allege that the town was duly incorporated. In holding the petition subject to general demurrer, the court said: "Ordinarily the allegation that the town had been duly incorporated would be sufficient, on general demurrer, to show that it was so incorporated; but the petition shows further that the territory included within the limits of the town is of a superficial area extending 18,886 varas east and west, and 5,340 varas north and south, making an area of 27.8 square miles. In the absence of the allegation of facts to show that this large scope of territory was legally incorporated, it must be held that the allegation that the town of Liberty was duly incorporated is not sufficient, even on general demurrer, when taken in connection with the allegation as to the limits of the town. If the town was not lawfully incorporated, there was no authority to hold the election, or to have the returns counted and the result declared, nor, indeed, any occasion therefor."

So here, regardless of what we might hold if the petition were silent after averring that the area in controversy was unsurveyed public school land, we can not let that allegation override others which, together with the presumptions arising from the facts alleged and the facts within our judicial knowledge, put the land within what appears to be a valid grant from Spain to San Antonio.

The general demurrer having been correctly sustained to the petition for mandamus, it is ordered that the judgments of the District Court and of the Court of Civil Appeals be in all things affirmed.