

## THE ATTORNEY GENERAL

## OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN, TEXAS

January 23, 1950

Hon. Bascom Giles, Commissioner
General Land Office
Austin, Texas

Opinion No. V-987

Re: Constitutionality of Article
7467b, V.C.S., relinquish-
ing the title to abandoned
river beds in Counties over
350,000.

Dear Sir:

The question for opinion is stated in your letter as fol-
lows:

"I respectfully request your official opinion as
to the constitutionality of House Bill No. 336, Chap-
ter 372, Acts of the 51st Legislature, 1949, codified
in Vernon's Annotated Civil Statutes as Article 7467b.

"I have at hand applications from J.M. Shaw and
A. Raymond Jones for the purchase of .434 acres and
.386 acres, respectively, of the abandoned Trinity
River bed in the City of Dallas, Texas, situated near
the intersection of Industrial Blvd. and Corinth Street.
Many other areas in the City of Dallas are subject to
the provisions of this Act.

"The question has arisen as to the sufficiency of
the consideration of $10.00 per acre provided for in
said Act for the sale of these lands. The question has
also arisen as to the reasonableness of the cause for
including in said Act beds and channels of abandoned
rivers in counties with a population in excess of 350,-
000 and excluding those with a population of less than
350,000. This Department, of course, has formulated
no policy under the administration of this law, as the
above named applications are the first to be consider-
ed under same."

The Act referred to in your letter provides as follows:

"Section 1. In all counties of this State having a pop-
ulation in excess of three hundred and fifty thousand (350,-

000) according to the last preceding Federal Census, the State of Texas hereby relinquishes, quit claims and grants unto the adjacent landowners all right, title and interest of the State of Texas in and to all of the beds and channels of all rivers and streams that are now, or that may hereafter be, abandoned by reason of the construction of new beds or channels for such rivers or streams by levee improvement districts, drainage districts, or flood control districts organized and created under the laws of the State of Texas or by special Act of the Legislature of the State of Texas, where such abandonment is provided under an approved plan of reclamation.

"Sec. 2. The landowners adjacent to such abandoned bed or channel, shall own that portion of such bed or channel adjacent to their respective lands, and to the middle of such abandoned bed or channel.

"Sec. 2a. Any claimant to any portion of said land may perfect his title by applying to the Commissioner of the General Land Office to purchase the land claimed. Such application shall be accompanied by field notes of the tract claimed together with filing fee of One Dollar ($1) and evidence of such claimant's right and title. Upon receipt of a satisfactory application and satisfactory showing of right, such application shall be approved and the land awarded to the applicant. Within sixty (60) days after such award, the applicant shall pay to the Commissioner of the General Land Office for the use and benefit of the public school fund the sum of Ten Dollars ($10) per acre for the land, and upon receipt thereof, the Commissioner shall issue to the claimant a patent to the land. The Commissioner is hereby authorized to make such rules and regulations as may be appropriate and necessary to accomplish the purpose of this Act.

"Sec. 3. Whenever a bed or channel of a river or stream has been filled under an approved plan of reclamation as provided by law, or where an approved plan of reclamation provides for the filling of a bed or channel of a river or stream, such fact shall be conclusive evidence of the abandonment of such bed or channel. Wherever an approved plan of reclamation provides that a bed or channel of a river or stream shall be used for the transmission or storage of storm waters, such fact shall be conclusive evidence that such bed or channel has not been abandoned.

Hon. Bascom Giles, page 3    (V-987)

"Sec. 4. Nothing herein contained shall be construed as affecting in any manner the rights of the State, cities, counties, any other political subdivision of the State, public utility companies, or of the public, in and to the streets, alleys, roads, parks, levees, flood control works, water lines, sewer lines, gas lines, oil lines, power lines, railroads, or other public utility lines, where the same now occupy or cross any abandoned river bed or channel, provided further, that nothing herein shall be construed as affecting in any manner the validity of oil, gas and other mineral leases, heretofore executed, or that may be hereafter executed by the State prior to the abandonment of such bed or channel.

"Sec. 5. Wherever the term 'approved plan of reclamation' is used herein, it shall be construed to mean a plan of reclamation approved by such authority or authorities as are in such cases provided by the laws of the State of Texas.

"Sec. 5a. All minerals in any land donated under the provisions of this Act are hereby reserved to the State of Texas.

"Sec. 6. The provisions of this Act shall not apply to that portion of the river bed situated within the corporate limits of San Antonio, Texas."

The various constitutional provisions dealing with the public free school fund have no application here. State v. Bradford, 121 Tex. 515, 50 S.W.2d 1065, 1072 (1932). The only provision of the Texas Constitution which may apply is Article III, Section 51, which provides, in part, as follows:

"The Legislature shall have no power to make any grant or authorize the making of any grant of public money to any individual, association of individuals, municipal or other corporations whatsoever. . . ."

The foregoing constitutional provision refers only to grants of public money. Nevertheless, our courts have strongly intimated, without expressly so holding, that it applies to property rights as well. See State v. Bradford (supra); Rhoads Drilling Co. v. Allred, 123 Tex. 229, 70 S.W.2d 576, 581 (1934); Friedman v. American Surety Co., 137 Tex. 149, 151 S.W.2d 570, 582 (1941); Barber v. Giles, 146 Tex. 401, 208 S.W.2d 553 (1948). We assume for the purpose of this opinion that Article III, Section 51, applies to the abandoned bed areas in question.

4**72**

Standing alone, Section 1 of Article 7467b, constitutes a grant of land without consideration in violation of said Article III, Section 51. It was, doubtless, for this reason that Section 2a was enacted under which the applicant could perfect his title by paying $10 per acre to the State. If the Act is construed as not constituting a present conveyance of the State's title, under which the adjacent landowner may or may not elect to obtain the patent provided for in Section 2a, his title being transferred by operation of the Act itself and regardless of whether he pays the $10 per acre or not, then it is invalid. However, the Act is also subject to the construction that title does not pass automatically but only after application has been made, $10 per acre paid and the patent issued. If so construed, the Act is valid. It is well settled that if an Act is subject to two constructions, one of which will render it unconstitutional, the construction to be adopted is the one which will render the same constitutional, it being assumed that the Legislature intended that the Act be so construed. Green v. Robison, 117 Tex. 516, 8 S.W.2d 655 (1928); Empire Gas & Fuel Co. v. State, 121 Tex. 138, 47 S.W.2d 265, 272 (1932); and 9 Tex. Jur. 483.

It is our construction of the Act, therefore, that no present title to the land passes automatically to the adjacent landowners, but passes, if at all, only after application and compliance with the procedure set forth in Section 2a. The Act is a Sales Act.

The question of the adequacy of the consideration is suggested by your letter.

The power to control the disposition of the land of the State resides in the Legislature, and the matter of determining the adequacy of the consideration to be received therefor is a political matter exclusively within their province. Conley v. Daughters of the Republic, 106 Tex. 80, 156 S.W. 197, 157 S.W. 877 (1913); Caples v. Cole, 129 Tex. 370, 102 S.W.2d 173, 177 (1937); Imperial Irrigation Co. v. Jayne, 104 Tex. 395, 138 S.W. 575 (1911); 38 Tex. Jur. 836. Whether the Legislature has acted wisely in this instance or whether the consideration to be received represents the true market value of the land are matters within legislative province with which neither the courts nor this office have any connection, provided, of course, no constitutional provisions are violated. Treating the Act in question as a Sales Act, and we think it must be so treated, the Act is constitutional, and the question of the adequacy of the consideration being purely legislative does not affect the constitutional aspects of the problem.

As you point out, the Act covers only counties having a population of 350,000, or more, according to the last preceding

bv field notes of the tract claimed together with filing

Federal census. At present the Act applies only to Dallas and Harris Counties. We take it from your letter that you feel that the Act may violate that portion of the Constitution under which "the Legislature shall not . . . pass any local or special law" in certain enumerated instances and also "where a general law can be made applicable." Texas Constitution, Article III, Section 56.

The subject matter of the Act in question is not among the enumerated instances concerning which special laws are prohibited. If the Act fails because of this provision of the Constitution, it is because a general law could be made applicable. Our courts have held that the question of determining whether a general law can be made applicable is a question for the Legislature and that its action in passing the law, if not conclusive, is at least persuasive, that a general law would not be applicable. 39 Tex. Jur. 63. In any case, it seems that if the classification set forth in the Act is prospective so as to permit the future entrance into the class when the enumerated qualifications and standards have been met, and when the classification is reasonable, in the sense that it is broad enough to include a substantial class, then the same is a general rather than a special law. Miller v. El Paso County, 136 Tex. 370, 150 S.W.2d 1000 (1941); 2 Sutherland Statutory Construction (3rd Ed.) 20. We believe that the Act satisfies these requirements. The fact that the bed of the river within the corporate limits of San Antonio is excluded does not change this result since the exclusion of such river bed is reasonable. See Anderson v. Polk, 117 Tex. 73, 297 S.W. 219 (1929) which recognizes that San Antonio acquired title to the bed of the San Antonio River under the grant from Spain to such city.

In our opinion, the Act is constitutional.

We wish to call your attention to Article 7467a, which provides as follows:

"The State of Texas hereby relinquishes, quit claims and grants unto all incorporated cities and towns that have a population of forty thousand inhabitants, or more, according to the 1920 census, all of the beds and channels, and also all of the abandoned beds and channels, of all rivers, streams and other channels that are now or that may hereafter be within the present or future corporate limits of such cities or towns, in so far as the beds and channels, and such abandoned channels, of such rivers, streams and other channels may be owned or claimed as the property of said State. (Acts 1925, 39th Leg., ch. 155, p. 366, sec. 1)."

474

Dallas and Harris Counties are the only counties presently covered by Article 7467b. Several Texas cities are covered by Article 7467a, but of these, only two lie within Dallas or Harris Counties, i.e., Dallas and Houston. Articles 7467a and 7467b conflict insofar as abandoned river bed areas are located within the corporate limits of Dallas and Houston. This poses a serious question as to the validity of any title which may issue under Article 7467b. If patents issue to the areas within the Dallas City Limits upon which applications are now pending, they will pass whatever present right and title the State has, but we do not pass on the nature or extent of this title or the relative rights which may then exist between the patentee and the City of Dallas.

## SUMMARY

Article 7467b, V.C.S., Acts 51st Leg., R.S. 1949, ch. 372, p. 708, purporting to relinquish and grant to adjacent landowners in all counties having a population in excess of 350,000, according to the last Federal Census, the title to beds and channels of abandoned rivers and streams is a sales act and does not automatically pass title to the land. The Act does not violate Sections 51 and 56 of Article III, Constitution of Texas.

APPROVED:

Charles D. Mathews
Executive Assistant

Yours very truly,

PRICE DANIEL
Attorney General

By _H. O. Pruett, Jr._
Assistant

HDP:b