### TRUEHART & ANDREWS V. L. H. BABCOCK.

1. LIMITATION.—The statute of limitations does not run against the State, nor can it run against a party claiming under the government, until the right accrues to the claimant. It follows, that ten years' occupancy, &c., cannot avail a defendant under the plea of limitation, if during a portion of that time the title was in the government, and the land vacant.

2. SAME.—Nor is the above rule varied by the fact that defendant settled upon land, claiming it in good faith, and believing it to be titled land, paying taxes, and all this with the knowledge of tax collectors, or other officers of the State.

3. TRESPASS TO TRY TITLE.—When, in trespass to try title, the defendant relies on the statute of ten years' limitations, and the presumption of a grant other than that under which plaintiff claims, and the evidence shows that the title claimed by plaintiff emanated from the government within ten years before the institution of the suit, and there is evidence tending to show a former grant, the sufficiency of that evidence to establish a former grant should be submitted to the jury as a distinct proposition.

APPEAL from Galveston. Tried below before the Hon. William H. Stewart.

This was an action of trespass to try title.

The appellee went upon the land in controversy on the 18th of July, 1852, under a deed from one F. W. Baumgarten, which deed recited the payment of ten dollars at the time of the conveyance, and recited, further, that the heirs of Grayson and others having set up pretended claim or claims to the land, the appellee should make no further payment upon the said land until Baumgarten should procure from the State of Texas, and deliver to the appellee, a patent to the 640 acres of land described in the deed, whereupon the appellee should pay to said Baumgarten $640, exclusive of the ten dollars already paid. The land is described in the deed as being on Clear creek, in Galveston county, and being the same tract of land surveyed on said creek for John A. Jarboe. Defendant proved that he had never received any patent; that he had always been prepared to pay the balance of

the purchase-money, and had applied to his vendor for further conveyance, but had never received anything beyond the original deed. The defendant proved residence upon the land, use, enjoyment, etc., since the date of his deed, with payment of taxes during the time, and that the land was known as the John A. Jarboe survey. Defendant proved also that the plaintiff Trueheart, in the capacity of tax collector of Galveston county, collected of defendant the taxes for several years upon the land sued for in this action. It was proved, by the chief clerk of the general land office, that the land in controversy was at one time surveyed for John A. Jarboe, on a conditional certificate, issued to him by the board of land commissioners of Harrisburg county on the 2d day of August, 1838, but that said conditional certificate, nor any other, was ever returned to the land office in the name of John A. Jarboe; that no unconditional certificate ever issued, by virtue of said conditional certificate, to Jarboe, and that the name of Jarboe is not to be found on the old or new maps of Galveston county in the land office, nor on the maps of Austin's colony.

The plaintiffs claim under a patent for a league of land issued to the heirs of James H. Spillman, by the State of Texas, on the 30th of August, 1873; that plaintiffs held regular title from James H. Spillman. The heirship of the parties under whom plaintiffs claim, and the issuance of the patent to Spillman on the 30th of August, 1873, for the land involved in this suit, are admitted. It was also proved, that the land sued for is in the littoral leagues. The defendant plead the five and ten years' statutes, and also possession, under deed duly registered, for more than twenty years, in good faith, and also possession for more than twenty years, with suggestion of valuable improvements.

Appellee, to sustain his pleas of limitation, "proved that he went into possession of the 640 acres claimed by plaintiffs in this suit, in 1852, under the deed from Baumgarten; that he had remained in the actual, uninterrupted, and adverse

possession of the land, using, enjoying, and cultivating the same, and paying all the taxes thereon up to the present time; that at and subsequent to the time of his going into possession there were others claiming said land, under what was known as the 'Muldoon grant'; never had heard or known of any dispute as to the title, except as between in-dividuals, until after the institution of this suit; never had any reason to believe that the title had not passed out of the government at the time he purchased from Baumgarten; knew that Baumgarten had been in possession of the land several years before he (appellee) purchased, living upon and cultivating the same; there were old improvements upon the land when he (appellee) purchased—an old house, quite dilapidated; did not know whether John A. Jarboe claimed under a location of his own certificate, or some other certifi-cate; knew it was called the 'Jarboe survey'; knew that there were claims set·up to the land under what was called the 'Muldoon grant.' H. M. Trueheart, one of the plain-tiffs in this suit, received from the defendant, (appellee,) in his capacity of assessor and collector of taxes, and receipted therefor, the taxes, State and county, for the years 1857 and 1868, inclusive."

The court charged the jury, among other things, as follows: "If you believe, from the evidence, that at the time of his settlement upon the land the defendant settled in good faith, and believed at the time that the title had passed out of the government; and if you further believe that the defendant, ever since his first settlement upon the land, has continuously resided thereon, and claimed and cultivated, used or enjoyed the same, unmolested by adverse suit, and that such posses-sion has been peaceable, adverse, exclusive, and continuous, and that such occupancy has been in good faith, and that he has yearly ever since rendered the same for taxes, and has annually paid to the State and county all the taxes thereon, from his first settlement, and that such occupancy and posses-sion and claim of defendant and payment of taxes were known

to the State; and if you further believe, from the evidence, that such occupancy and possession has been for a period of ten years next before the 25th day of May, 1874, exclusive of the time that elapsed between the 28th day of January, A. D. 1861, and the 1st day of April, 1870, then you will be authorized to find for the defendant."

Verdict and judgment for defendant.

*Joseph & Kittrell,* for appellant, contended, that the right of the State is not barred by five years' possession under deeds duly registered, paying taxes, &c.; nor by ten years' naked possession, use, and enjoyment, paying taxes; nor by twenty years' or longer naked possession.

Both the five years' statute, which gives title by possession and enjoyment for five years under deed or deeds duly registered, with payment of taxes, and the ten years' statute, (Paschal's Dig., 4624; Stat. of Lim., sec. 17,) which gives title by possession and enjoyment for ten years without evidence of title, provide that the right of the government shall not be barred. The strictest possible construction that can be placed upon section 17, the section with reference to which the charge of the court was given, would seem to be, that ten years' possession will not bar the government; but will any length of possession, unaccompanied by such circumstances as raise the presumption of a grant, bar the right of the State to real property?

" *Nullum tempus occurrit regi* has been recognized in the United States; and it is held that the statute of limitations does not run against the State, nor against the United States, unless it is expressly so provided." (1 Cooley's Blackstone, 247, note; Ang. on Lim., secs. 34–41; Sayles' Prac., sec. 219; 2 Mason C. C., 315; 11 Gratt., 516; State *v.* Joiner, 23 Miss., 500; Jackson *v.* Winslow, 2 Johns., 82; 6 Porter, 89; 8 Barb., 189; 48 Me., 516; 18 Johns., 229; 3 Serg. & R., 291; J. Scammon, (Ill.,) 70–107; 4 Bibb, 554; 6 Peters, 666; 37 Tex., 305–482.)

The plea of defendant of twenty years' possession was evidently drawn, as argument in the court below suggested, with reference to the defense of the presumption of a grant.

That the presumption of a grant cannot be sustained in this case,—

1st. Because the deed under which the defendant claims repels the presumption of a grant.

2d. Because the land in controversy is within the littoral leagues, and the consent of the Federal Executive of Mexico was necessary to pass title to the same, which consent is neither alleged nor proven.

3d. Because the defendant has made no allegations on which to base the proof of a presumption of a grant.

The deed under which the defendant claims recognizes the title to the land to be in the State, and makes a delivery of the conveyance of such title to defendant condition precedent to the payment of the purchase-money to his grantor. This payment defendant proves he has never made, because he has never received further title. This recital in the defendant's grantor's deed is alone sufficient to repel every presumption of a grant.

"The presumption of a grant can never fairly arise where all the circumstances are consistent with the non-existence of a grant, nor *a fortiori* where the claim is of such nature as is at variance with the presumption of a grant." (Taylor *v.* Watkins, 26 Tex., 693, 697, 699; Yancey *v.* Norris, 27 Tex., 40; Sulphen *v.* Norris, 44 Tex., 204; 2 Wash. on Real Prop., 293; 1 Wash. C. C., 70.)

"It is well-settled law of this State, that the consent of the Federal Executive of Mexico was necessary to pass title to land within the littoral leagues." (Paschal's Dig., art. 546; Taylor *v.* Watkins, 26 Tex., 689; Yancey *v.* Norris, 27 Tex., 40; Smith *v.* Power, 23 Tex., 219; 3 Tex., 321, 499; 5 Tex., 410; 9 Tex., 410, 556; 10 Tex., 316; 42 Tex., 410; Plummer *v.* Power, 29 Tex., 16.)

We submit, that the right of the State, nor of its grantees,

can in anywise be affected by the receipt of taxes paid by defendant, nor the plaintiff be estopped to assert title to this land by reason of having collected taxes paid upon it by defendant.

The public officers of the State are chosen for the purposes of conducting the government, and are not mere agents of the State, whose acts are binding to such an extent as to estop the State from asserting its rights to property. (Rossire *v.* City of Boston, 4 Allen, (Mass.,) 57; 1 Allen, 101, 172, 417.)

We confidently submit, that the doctrine of estoppel can have no application to this case. The defendant knew the state of the title to the property; he was not misled by any act of the State or its agents; he asserted his title and expended his means when he could have easily possessed himself of all the information that was necessary to fully inform him in the premises. (3 Wash. on Real Prop., ch. 2; Big. on Est., 480, 600, 586; Burleson *v.* Burleson, 28 Tex., 415; Scoby *v.* Sweatt, 28 Tex., 730, 731.)

The defendant was bound to take notice, and did have notice, that the title had not passed out of the State, and that his possession was not of such nature as to support his claim for valuable improvements.

*L. F. Price*, for appellee.—From the authorities, we submit that the following propositions are fairly deducible, viz.:

First. A grant, under certain conditions, may be presumed as well against the State as against an individual. (Lewis *v.* San Antonio, 7 Tex., 304; 5 Tex., 413, 414; 26 Tex., 314.)

Second. In the exercise of this presumption, there is no just or reasonable distinction between a corporeal and an incorporeal hereditament. (1 Phil. on Ev., 455; Cowen and Hill's Notes, 298, and authorities there cited; Lewis *v.* San Antonio, 7 Tex., 305, 307.)

Third. Presumption or non-presumption strictly a jury question.

Fourth. The fact that the land had been the subject of litigation between individual claimants is a "cogent circumstance favoring the presumption that the title had passed out of the government." (Herndon *v.* Casiano, 7 Tex., 336.)

Fifth. The presumption of an ancient grant is not affected by the recent issue of a patent to an adverse claimant. (Paul *v.* Perez, 7 Tex., 338.)

Sixth. The fact that the vendee goes into possession under, and relies upon, a deed duly registered, without any knowledge of inherent defects in his vendor's title, as relates to the government, but with the knowledge of individual adverse claims, and continues in that possession undisturbed by the government, and not dispossessed by individual claimants for a period of more than twenty years, rendering and paying to the State and county all the taxes thereon annually, would, taken together, be such facts as would authorize a jury to presume a grant.

"Where the statute of limitations can run, the rule is imperative as a law of prescription, and vests an absolute title; but where it does not run, as against the crown and the State under the common law, those courts act by analogy, and presume a grant from long possession. This has been done on possession of various lengths, from twenty to sixty years. The later decisions incline to twenty years, and our own courts have strongly intimated a period analogous to the longest period of limitation known to our statutes." (Mitchel *v.* United States, 9 Pet., 760; 1 Greenl. Ev., secs. 45, 17; Jackson *v.* McCall, 10 Johns., 377; 2 Cowen & Hill's Phillips, 354; Gilchrist *v.* McGee, 9 Yerg., 455.)

Then we contend, that a grant from the government being presumed, the patent issued to appellants in this case, if it intended to convey the land in controversy, was so far void. The very fact that a sufficient length of adverse holding had elapsed, would operate a divestiture of title in the government, creating a corresponding inability to confer title. (See Shep. Touch., 245; Patterson *v.* Jenks, 2 Pet., 216; Thomp-

son *v.* Gaillard, 3 Rich., 418; Pollard *v.* Greit, 8 Ala., 930; 7 An. Dig., 289, 290; Sm. Dig., 245.)

ROBERTS, CHIEF JUSTICE.—This case was advanced for a hearing out of its order, upon motion of appellants.

The assignment of error relied on was the error of the court in the third subdivision of the charge.

The propositions designed to raise the questions on this charge were too numerous and minute in the subdivision of the points of objection, and, as a consequence, caused the matters in the record, stated under each, to be too much detached and often repeated, instead of being combined under one or two propositions, that would have more forcibly and appropriately presented the grounds of objection which were really designed to be presented.

Those propositions, though raising the desired objections to the charge, might well have been presented in one, by adding together what, in substance, was contained in two of the assignments of error, with a small addition, thus: "The court erred in instructing the jury that they might regard the statute of limitations of ten years' possession as running against the State, and in favor of the defendant, prior to the issuance of the patent for the land to the plaintiff's vendor; if the defendant had settled on the land in good faith, believing at the time that the title had passed out of the State, and that he had paid the taxes, and that such possession, claim, and payment of taxes were known to the State."

Under this proposition, all of the leading facts might have been stated, showing that the patent had issued on the 30th of August, 1873, and that plaintiffs' chain of title under it was admitted to be complete; the possession of defendant from 1852; payment of taxes; the title under which he took possession tending to give notice that the land was vacant; the evidence, in substance, of Rhoads Fisher, tending to show that the land was vacant until said patent issued,—all of which matters were stated under one or the other of the several

propositions.  To this may be added, that the court charged
the jury to find for the plaintiffs under their title, unless de-
fendant was protected by the ten years' limitation, of such
character as is mentioned in the charge; which was, first,
that it would be no defense if the defendant knew that the
land was vacant when he settled upon it; and, second, (the
charge assigned as error,) " But if you believe, from the evi-
dence, that at the time of his settlement upon the land the
defendant settled in good faith, and believed at the time
that the title had passed out of the government; and if you
further believe that the defendant, ever since his first settle-
ment upon the land, has continuously resided thereon, and
claimed and cultivated, used or enjoyed the same, unmolested
by adverse suit, and that such possession has been peaceable,
adverse, exclusive, and continuous, and that such occupancy
has been in good faith, and that he has yearly ever since
rendered the same for taxes, and has annually paid to the
State and county all of the taxes thereon, from his first settle-
ment, and that such occupancy and possession and claim of
defendant and payment of taxes were known to the State;
and if you further believe, from the evidence, that such occu-
pancy and possession has been for a period of ten years next
before the 25th of May, 1874," (the date when the suit was
brought,) " exclusive of the time that elapsed between the
28th day of January, 1861, and the 1st day of April, 1870,
then you will be authorized to find for the defendant."

There was no further charge relating to the merits of the
case, and this, and this alone, was that upon which the jury
found a verdict for the defendant.

This mode of presenting the case for consideration has been
adopted, in preference to considering in detail .the several
propositions in the brief that would lead to the same result.

· The previous part of the charge expressly indicates this to
be a charge upon the statute of limitations of ten years; and
as such, in reference to the facts of this case, it was certainly
erroneous.

The statute of limitations does not run against the State. (Paschal's Dig., art. 2393.) There was evidence tending to show that the land was vacant previous to the date of the patent issued on the 30th of August, 1873, the year before the suit was bought; and the fact that the patent then issued for the land, itself tended to raise a presumption that the land was vacant previous to that time. In this case, as in that of Smith *v.* Power, 23 Tex., 29, it was not shown how long the land was located before the patent issued; and it was there held, that if that fact was for the advantage of the person who pleaded the statute of limitations, it was incumbent on him to show it. And in the same case it was said, that "it is well settled, in a case like the present, that the statute does not commence to run against a party claiming under the government until the right accrues to the claimant." Now, if the statute of limitations cannot run against the State, as it is expressly declared by our statute, (Paschal's Dig., art. 2393,) in connection with the article prescribing the ten years' limitation, and if, also, it does not run against the plaintiffs until they acquired a title through the patent, it is not perceived how the defendant could possibly derive a title to the land by limitation of ten years, if the land was vacant nine out of the ten years preceding the day on which the suit was brought. (Wood *v.* Welder, 42 Tex., 410; Austin *v.* Dungan, 46 Tex., 245.) As a bar by limitation under the statute, it would not be aided by the good faith and claim of defendant in settling upon the land, believing it to be titled land, and by his paying the taxes, and by the knowledge by the State of those facts, if, indeed, there was any way by which they could be made known to the State. The State is not certainly estopped by any knowledge of such facts by any of its tax collectors or other officers. The statute of limitations of ten years confers title upon the naked possessor who holds adversely, without paying taxes, or any of the extraneous facts embraced in the charge. But as a charge upon the statute of limitations, as a statutory defense, it should have gone further, and required

the jury to be satisfied that the State had parted with the title to the land before the commencement of the ten years during which the statute would run before the suit was brought, and let them thereby find a verdict in reference to all of the evidence before them tending to establish the fact that the land was vacant during nine of the ten years, as well as to the possession during the time of his settlement. If, on the other hand, it was designed by this charge to allow the jury to presume a grant from the government by ten years' possession, strengthened by the accompanying circumstances enumerated in the charge, still it was erroneous; because the doctrine of the presumption of a grant to land is not that the possession during ten or any number of years gives a title to land, as does the statute of limitations expressly, but that long continued possession may be evidence tending to prove that a grant from the government had issued at some former time, from which defendant derived title, or which was then an outstanding title, adverse to that of the plaintiffs; and as there was evidence tending to show that there had been no title issued from the government, it should have been submitted to the jury distinctly, in order to constitute a defense, to determine that, from all the evidence before them, there had, at some time previous to the date of the patent under which the plaintiffs claimed, been a grant or patent issued to some one, or a valid location by a valid certificate had been made, by which the government had parted with its title to the land.

His deed, in 1852, from Baumgarten, showed that he contracted to pay for the land, except ten dollars advanced, only when a patent should be procured from the government. It was proved that a survey of the land was made in 1838 by virtue of a conditional certificate, to which no corresponding unconditional certificate had ever been issued, and applied to the survey; it was shown that defendant had never been presented with such a title; and it was shown that a patent had issued, under which plaintiffs claim, in 1873. In the

case of Taylor v. Watkins, 26 Tex., 700, wherein there were facts not very dissimilar to these, it was said, by Justice Bill, that "these were all circumstances tending to repel the presumption of a grant, .... and the court ought to have left it to the jury to say, upon the whole evidence, whether there has ever been a grant to the plaintiff or not." By which is meant, whether or not there ever was in fact a paper title, in the shape of a grant, patent, or other tangible muniment of title, by which the title was conveyed from the government which at the time had the sovereignty of the soil.

In the case of Yancey v. Norris, it was held, that an abortive effort to obtain a grant, or a completion of it, from an incompetent officer, was a circumstance repelling the presumption of any grant having been made on that application. (27 Tex., 48. See, also, Sulphen v. Norris, 44 Tex., 204.)

REVERSED AND REMANDED.