LAWRENCE S. TAYLOR v. CHARLES HOYA ET AL.

No. 730.

1. **Vacant Public Land Within City Limits—Nacogdoches.**—Under the Spanish and Mexican laws in force prior to the independence of Texas, the lands within the limits of the town of Nacogdoches were granted to the inhabitants and the corporation for private and municipal purposes, and subsequent acts of the Legislature of Texas incorporating the city of Nacogdoches recognized its right to the vacant lands within its limits. By the latter of these acts the area of the city was reduced, but an act supplementary thereto empowered the corporation to sell and convey title to any vacant lands within its former limits, and not within the latter ones. Subsequently the city abandoned its special incorporation, and incorporated under the general law. *Held*, that it did not thereby lose its property rights to the land within its ancient limits, and that such lands were not subject to sale by the State under the Acts of March 29, 1887, and April 5, 1889.

2. **Judicial Notice—Special Act.**—The court may take judicial notice of a special act relating to the rights of a city corporation, though it be not pleaded.

APPEAL from Nacogdoches. Tried below before Hon. JAMES T. POLLEY.

*L. S. Taylor*, for himself.

*E. B. Lewis*, for appellees.

GARRETT, CHIEF JUSTICE.—This action was brought by the appellant against Charles Hoya, as county surveyor of Nacogdoches County, to require him to receive and file the application of appellant for the purchase, as unappropriated public land, of about seventy-five acres of the old town tract of the corporation of Nacogdoches, and to make, survey, and forward the field notes of said land to the General Land Office, in accordance with an Act of the Legislature of the State of Texas, entitled, "An act to provide for the sale of such appropriated public lands situated in the organized counties of the State of Texas as contain not more than six hundred and forty acres," approved March 29, 1887, and an act amending the same, approved April 5, 1889. E. S. Jameson, William Hillenkamp, and Robert Berger were also made defendants, Jameson as claiming the land through a donation by the town of Nacogdoches to the Houston East & West Texas Railway Company, and Hillenkamp and Berger as being in possession thereof. A general demurrer to the petition was sustained by the court, and the suit was dismissed.

By an Act of the Legislature, approved July 14, 1879, and amended March 11, 1881, a portion of the unappropriated public domain of the State of Texas was set apart for sale at 50 cents an acre. A part of the land so appropriated for sale was "such separate tracts of unappropriated public land, situated in organized counties of this State, as contain not more than six hundred and forty acres." Gen. Laws

16th Leg., special session, p. 48; Gen. Laws 1881, p. 24. This land was afterwards withdrawn from sale. Gen. Laws 1883, p. 2. The Act of 1887, and the amendatory act of 1889, by reference to the Act of 1879, again placed the same land on the market at the rate of $2 an acre. The inquiry therefore arises, whether the land which the appellant seeks to purchase is unappropriated public land, the language, "such appropriated public lands situated in organized counties," referring to the prior setting apart thereof for sale.

Nacogdoches was one of the ancient municipalities of Texas, and was a town many years before the independence of Texas from Mexico was declared. A mission was established there as early as the year 1716, and the Spaniards maintained it as a presidio during the dispute between Spain and France, and, after the Louisiana purchase, with the United States, with respect to boundaries between those countries. It was a town of considerable importance before the independence of Texas and after the republic of Mexico was established. Under the Spanish and Mexican laws, the land within the corporate limits of a town were granted to the inhabitants and the corporation for private and municipal purposes. A survey of the town was made and lots were conveyed to individuals, while lots and lands were appropriated for public buildings, squares, commons, etc. Ditmar v. Dignowity, 78 Texas, 22. As stated by Judge Stayton, in the State v. Dunson, 71 Texas, 683, "the town of Nacogdoches doubtless had a corporate existence while the territory within this State was under the dominion of the government of Spain and Mexico." It has been an incorporated town under the laws of Texas since the year 1837, when Congress, by an act approved June 5th, that year incorporated Nacogdoches and other towns. That act clearly recognized the previous existence of the town, and the disposition of the public land within the corporation limits was provided for in section 7, as follows:

"Section 7. Be it further enacted, that whereas there being sundry public lots of ground in said corporation which are now useless, the aldermen shall, and are hereby authorized and empowered, in conjunction with the County Court of that county, to alienate said lots, or such portion thereof as they may deem advisable; the proceeds of such sale or sales to be by them jointly appropriated to the construction of a court house, jail, and such other building or buildings as they may think necessary." 1 Laws of Texas, 238.

The Act of 1837, in so far as it related to the town of Nacogdoches, was repealed by an act approved March 16, 1848, entitled, "An act to be entitled an act to incorporate the city of Nacogdoches." Laws 2nd Leg., 891. The limits of the city were defined, and it was provided that a copy of the plat and field notes of the survey establishing the boundary lines should be entered on the map of the land district both in the office of the district surveyor and the Commissioner of the General Land Office. The public land within the corporation was

placed under the control of the mayor and board of aldermen, to be disposed of by them as follows:

"Sec 8   The mayor and board of aldermen of said corporation shall have control of all vacant lands or lots within the corporate limits, and may dispose of the same or any portion thereof, the proceeds of which shall be applied to the improvement of said city in such manner as the mayor and board of aldermen, or a majority, may determine."

It will be observed that this law appropriates the land entirely to municipal purposes, and places it entirely under the control and at the disposition of the mayor and board of aldermen.   This act was amended January 28, 1850, and the city limits were reduced to one mile square, with the court house as the center.   By this reduction, nearly all of the land sought to be purchased by the appellant was left out of the corporate limits, and seems to be without the present limits. But the Legislature passed an act, approved February 11, 1852, entitled, "An act supplementary to an act approved January 28, 1850, concerning the corporation of the city of Nacogdoches," which recognized the title of the city to the vacant land lying within its ancient limits.   This was a special law and has not been pleaded, but judicial notice thereof may be taken by this court.   1 Dill. Mun. Corp., sec. 83.   Sections 1 and 2 of the act relate to the vacant land of the city, and are in the following language:

"Section 1.   Be it enacted by the Legislature of the State of Texas, that whereas many of the ancient records relating to the lots within the city of Nacogdoches have been lost, or are in an imperfect condition, and in order to quiet titles to real estate within said city, the corporation of said city is hereby invested with full power to release the corporation title to any lot or lots within said city in favor of individual claimants, on such terms as may be deemed just and equitable, and to compromise with adverse claimants generally, receiving and granting releases of title as may be agreed on for the purposes mentioned.

"Sec. 2.   That said corporation is fully empowered to sell and make title to any vacant lots or grounds which were embraced within the limits of said city as surveyed in the year 1837, and not included within the corporate limits as now defined."

It is not disputed that the land in controversy is within the ancient limits of the city.   Since the passage of the Act of 1852 the city has abandoned its special incorporation, and is now incorporated under the general law, and it is contended that such incorporation is a repeal of the special charter, and that with it fell the right to the public land conferred by the several Acts of the Legislature incorporating the city of Nacogdoches; that the right so conferred was nothing more than the right to control and sell the land for the purposes specified, which was lost by the abandonment of the special charter and incorporation under the general law.   In support of this contention, the appellant

relies on the authority of Bass v. Fontleroy, 11 Texas, 698; San Antonio v. Odin, 15 Texas, 542; Galveston v. Menard, 23 Texas, 406; Lea v. Hernandes, 10 Texas, 138; The State v. Dunson, 71 Texas, 66. Where the State has not granted the fee of the land, the right to revoke its authority to sell and appropriate the proceeds thereof undoubtedly remains. But we do not think the change of Nacogdoches from the special charter to the general charter has the effect to repeal the special laws granting it the vacant lands within its ancient limits. It does not lose thereby any of its property rights. It did not have the mere right to sell and use the proceeds, as in the case of Bass v. Fontleroy, and there was no loss of corporate existence. In Bass v. Fontleroy, the mayor and aldermen of Brownsville never had the right to do more than sell and apply the proceeds as directed for municipal purposes, and this right was ended with the corporate existence of the city of Brownsville, which had no ancient grant or claim in its favor, but merely the right conferred by the act of incorporation. The Legislature has never questioned the right of Nacogdoches to its lands, and the grant or appropriation stands to-day as it has always stood. The land which appellant seeks to purchase is not "unappropriated public land." Hence there was no error in sustaining the demurrer to the petition. It may be true that the donation of the land by the city to the Houston East & West Texas Railway Company is void as prohibited by the Constitution, but in the view we have taken of the law, that can not affect the right of appellant to purchase the same.

The judgment of the court below will be affirmed.

*Affirmed.*

Delivered January 17, 1895.