R. H. BARROW v. J. S. BOYLES ET AL.

No. 5569. Decided May 13, 1933.
(61 S. W., 2d Series, 783.)

*Niday & Carothers* and *R. H. Ward,* all of Houston, for plaintiff in error. .

Plaintiff's petition averred that the land in controversy was vacant unappropriated public domain belonging to the public free school fund of the State of Texas; that as such under the law the same was subject to be purchased by plaintiff as unsurveyed school land; that plaintiff had in all things complied with Article 5323 of the Revised Statutes of 1925, in regard to having same surveyed, etc.; that said Victor Blanco grant is not only void on its face, but it is absolutely void both in fact and in law in that it shows affirmatively that it was an attempted sale of a part of the public domain of the Republic of Mexico by the State authorities of the Mexican State of Coahuila and Texas to said Victor Blanco, the said land described in said grant is in truth and in fact lying and being within the ten littoral leagues of the coast of the Gulf of Mexico, that said pretended grant was issued without the knowledge or approbation of the President of the Government of the Mexican Nation; that by reason thereof said pretended grant was absolutely null and void, and the court erred in sustaining said demurrer and in dismissing this cause of action. Blount v. Webster 16 Texas, 625; Samuel Good v. McQueen's Heirs, 3 Texas, 241; Republic of Texas v. Thorn, 3 Texas, 499; Hatch v. Dunn, 11 Texas, 715; Smith v. Power, 14 Texas, 146; Smith v. Power, 23 Texas, 32; Wilcox v. Chambers, 26 Texas, 181; Cowan v. Williams, 49 Texas, 392; Wood v. Welder, 42 Texas, 408; Plummer v. Power, 29 Texas, 6; Lambert v.. Weyer, 27 Texas, 359; League v. Egery, 65 U. S., 264, 16 Law Ed., 655.

*Hunt & Hunt, Baker, Botts, Parker & Garwood, C. L. Carter, S. H. German, J. W. Lockett, J. E. Walton, K. C. Barkley, W. P. Hamblin, Fulbright, Crooker & Freeman,* all of Houston, for defendants in error.

It is obvious from appellant's petition that the land which he seeks to have declared vacant is covered by a grant issued by the Government of Coahuila and Texas on June 12, 1831, which is prima facie at least in due and legal form, the validity of which has been at least prima facie recognized by the sovereignty of the soil for nearly one hundred years, and is still being recognized by the Commissioner of the General Land Office, which grant (although the same may in reality be void) must be by some formal judicial action declared void before the Commissioner of the General Land Office can recognize the land in question as vacant public school land, and therefore (even though said grant is potentially void) the proper remedy would be an action brought by the State of Texas through the Attorney General; and consequently appellant was and is without right or authority to maintain this suit. Paschal's Digest, art. 809; Texas-Mexican Ry. Co. v. Jarvis, 69 Texas, 527, 7 S. W., 210; 25 R. C. L., 874; Section 5432, R. S., 1911; Sumners v. Davis, 49 Texas, 541; Sutherland on Statutory Construction, 209, 211; So. Pine Lbr. Co. v. Consolidated Lbr. Co., 217 Fed., 719; State v. Gallardo, 106 Texas, 274; Truehart v. Babcock, 51 Texas, 169; The Republic v. Thorn, 3 Texas, 499, 505; Titus v. Kimbro, 8 Texas, 210; Vincent v. State, 235 S. W., 1084 (Com. App.); Westrope v. Chambers, 51 Texas, 178; Winsor v. O'Connor, 69 Texas, 571, 8 S. W., 519; Wood v. Welder, 42 Texas, 408.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

The Galveston Court of Civil Appeals, in the opinion of Chief Justice Pleasants, clearly states the nature and result of this suit, as follows:

"This is a suit for mandamus brought by appellant (Barrow) against J. S. Boyles, county surveyor of Harris county, to compel him to make a survey of land in that county claimed by appellant to be public land set apart to the permanent free school fund of the state, and for which appellant had filed application for purchase under the terms and provisions of article 5323, Rev. St. 1925. The suit was brought under the second section of this article of the statute.

"The defendant Boyles impleaded a number of persons, ap-

pellees herein, who were in possession of the land, claiming title thereto under a grant from the State of Coahuila and Texas made to the Mexican citizen Victor Blanco, in 1831.

"The application for purchase was made by Victor Blanco in 1828 and was for eleven sitios or leagues of land. This application was approved by the Governor on October 25, 1828, and the title to him from the State of Coahuila and Texas was extended on June 1, 1831.

Plaintiff's petition, which is necessarily lengthy, sets out in full copies of all of the documents and records evidencing the grant to Victor Blanco under which the impleaded defendants claim title, and alleges that the defendants are claiming title 'under purported conveyance in regular chain under said purported Victor Blanco grant.'

"The defendant Boyles in his answer admitted the truth of the allegations of the petition showing compliance by plaintiff with all of the requirements of the statute in the matter of his application for the purchase of the land and as to the title claimed by defendants being under the grant to Victor Blanco from the State of Coahuila and Texas, and averred that he refused to make the survey because the Commissioner of the General Land Office declined to recognize the land as vacant and unappropriated public land and declined to authorize a survey thereof, and because the impleaded defendants were claiming title to the land; the nature of such respective claims and the acreage claimed by each being unknown to this defendant. He further averred that he was willing to make the survey and return the field notes thereof to the General Land Office in event the court should hold that the land is unappropriated public domain and a part of the public school lands of the state.

"The other defendants answered by general demurrer, and by special exceptions and pleas the nature of which, in view of the ruling of the trial court on the general demurrer, need not be stated.

"The trial court sustained the defendants' general demurrer, and the plaintiff declining to amend, his suit was dismissed."

The amended petition of plaintiff in error averred his compliance during the year 1924 with all legal requirements to authorize the issuance of a mandamus for the survey of the area in controversy, had such area been shown to be a part of the vacant, unappropriated public school land of Texas.

■ This Court has today upheld the validity of the statute under which this suit was brought. Van Camp et al. v. Gulf Produc-

tion Co. et al., 122 Texas, 383, 61 S. W. (2d) 773. We regard the case as determinable under our conclusions on a single question, and shall consider no other questions presented.

After averring the facts to show plaintiff in error's right to have a survey of the land ordered, if vacant, his petition averred that some sixty named parties besides the surveyor, who are defendants in error here, "are claiming said land under and by virtue of an alleged grant of five leagues of land purporting to have been made by one J. Francisco Madero, as commissioner, of the State of Coahuila and Texas, and purporting to have been dated the first day of June, 1831, to one Victor Blanco, and what purports to be the testimonio of said grant, together with certain related papers and documents as to said purported title, are recorded in the Spanish records of Harris County, Texas, in Vol. B, page 47, and that a translation of the same into the English language is recorded in Vol. B, page ____ of the Spanish Record of Deeds, etc., for Harris County, certified copies of which translated records are attached to and made a part of this petition; that the said defendants are claiming their respective parcels of said land under purported conveyances in regular chains of title under said purported Victor Blanco grant down to said claimants respectively, and that said defendants are not claiming the lands involved in this suit, or any part thereof, under any other chain of title other than said purported Victor Blanco grant."

Plaintiff in error further averred that the testimonio was improperly admitted to record in Harris County on April 14, 1838, and that the protocol was not in the General Land Office of Texas, and that no field notes, sketches, or maps pertaining to such grant were ever in the Land Office.

Plaintiff in error then averred that he attached to his petition a certified copy of the purported testimonio of said grant, "for the sole and only purpose of showing that defendants in this cause are asserting title to the land involved in this suit, claiming the same alone under and by virtue of said purported grant to Victor Blanco, and that defendants have no other title or claim to said land other than the claim of title resting upon said supposed Victor Blanco grant."

Plaintiff in error's petition further alleged:

"Relator further shows to the court that said purported grant of said five leagues of land by the Mexican Government of the State of Coahuila and Texas, by and through said J. Francisco Madero, as its commissioner, to said Victor Blanco, is not only void on its face, but is absolutely null and void both

in fact and in law, *in that it shows affirmatively that it was an attempted sale of a part of the public domain of the Republic of Mexico by the State authorities of the Mexican State of Coahuila and Texas, to said Victor Blanco, the said five leagues of land declared in said grant are in truth and in fact lying and being within the ten littoral leagues of the coast of the Gulf of Mexico; that said pretended grant was issued without the knowledge or approbation of the President of the Government of the Mexican Nation, and that by reason thereof said pretended grant was absolutely null and void; that said Francisco Madero was without any power whatsoever to issue said grant,* not only because the title to the lands within the ten littoral leagues of the Coast of the Gulf of Mexico was the property of the National Government of Mexico, but the title to said lands was never vested in the State of Coahuila and Texas, and the said Francisco Madero was never vested with any power or authority whatsoever to grant concessions in sales of lands within the ten littoral leagues of the coast of the Gulf of Mexico, by the National Government of Mexico, *but was only vested with the power to extend title to the colonists residing within said territory, and that by reason thereof the attempted exercise of the power by the said Francisco Madero to extend the title to said land to Victor Blanco* was absolutely null and void, but was likewise null and void because if the said Francisco Madero did have the power to grant the concessions or sale of said lands to Victor Blanco, he was absolutely prohibited from making said concessions in sale without the consent and approval of the Federal Executive of Mexico, and that the Federal Executive of Mexico never did give his assent or approval to the issuance of said pretended grant to the said Victor Blanco.

"Relator further respectfully represents to the court and declares the fact to be that, *other than said void grant to Victor Blanco,* neither the Government of the Spanish Nation while it had jurisdiction over said territory, nor the Mexican National or State Governments, succeeding the Spanish Government, nor the Government of the Republic of Texas, succeeding the Mexican Government, nor the State of Texas, ever granted or attempted to grant, give or convey said described five leagues of land or any part thereof to any person or persons whomsoever; and no person or persons whomsoever are now claiming or have ever asserted any claim to said land or any part thereof except the claimants hereinbefore referred to who are claiming under said pretended and void grant to Victor Blanco, and said

land is in truth and in fact, under the laws in such cases specially made and provided, vacant and unsurveyed public domain and belongs to the public school lands and school fund of the State of Texas, and your Relator has the prior right, under the law and the facts hereinbefore set out, to have the same surveyed as such by the Respondent as the County Surveyor of Harris County, Texas, and to have the field notes of such survey, with a plat thereof, returned by him to and filed in the office of the Commissioner of General Land Office at Austin, Texas, with Relator's filing fees, and the Relator is entitled to have the County Surveyor of Harris County, Respondent herein, to classify and appraise said land and the timber, if any, thereon, and to report such classification and the reasonable market value of said land, under oath to the said Commissioner of the General Land Office, and thereafter to purchase said land from the State of Texas, under the laws governing such applications and sales, all of which Relator is desirous of doing, and is ready, able and willing to do.

"Relator further represents to the court that he verily believes and alleges the fact to be that the Commissioner of the General Land Office based his action in refusing to authorize the survey of said land at the request of this Relator, as aforesaid, and his refusal to place said land on the market for sale, and to sell the same to this Relator, etc. upon the claims of the above named defendants claiming under said void grant to Victor Blanco, and that the Respondent, J. S. Boyles, bases his refusal to survey said land, to prepare and return field notes, etc., thereof and to classify and appraise the same upon the application of this Relator, on said claims and assertions of title under said void grant and upon the existence of said pretended grant and said pretended and asserted claims of title, and said void grant upon which they are based, are a bar to Relator's right to purchase said land from the State of Texas, which he is entitled to have removed by decree of this Honorable Court."

Among the documents appearing in the testimonio, according to the copy attached to plaintiff in error's petition, is the following final grant, to-wit:

"José Francisco Madero, commissioned by the supreme Government of the State of Coahuila and Texas to give possession to the inhabitants settled in the twenty leagues bordered by the rio Sabinas, to those that are living on the banks of the Trinity and San Jacinto rivers, *with the knowledge and approbation of his excellency, the President of the Republic, and with that of*

*several Mexican purchasers in Texas*—Inasmuch as the citizen Victor Blanco neighbor of the city of Monclova has been granted by his excellency the Governor eleven sitios of land as buyer, as shown by the document signed on the 25th of October, 1828, and presented by his attorney in fact the citizen Samuel M. Williams, in the name of the State, I grant, convey and give possession, real and personal five sitios of land, well measured, out of the eleven named in said concession, on the western bank of the San Jacinto river, inside of the littoral line, its limits being described in the map and the survey plat made by the surveyor Tho. H. Borden as shown in this document. Of said tract, one and one-half sitios belong to the temporal class, and the three and one-half left to the agastadero class, for which he shall pay the State the sum of five hundred seventy-five dollars, according to the stipulations named in article of March 24th, 1825, in the installments allowed by article 22 under the penalties therein expressed, being warned that he shall build mounds of lime and gravel in each corner of the land inside of a year, settle and cultivate the same conforming to said law; that he shall comply with all that the law requires and that he never will fail in complying strictly with the foregoing. Therefore, making use of the faculties granted me in virtue of my commission, I issue the present title, and order same to be legalized, and remitted to the interested party, that he may possess and keep as his the five sitios to him sold, him, his sons, heirs and successors, or any one who may receive any right from any of them, it being the will of the state.

"Given in the town of Austin, June 1st, 1831, signed by me with two assistants as witnesses, according to law, I certify.
"Jose Francisco Madero.
"Asst. Antonio Arranaga—Asst. Julian de la Garza."

The petition of plaintiff in error makes evident that the object of this suit is to obtain judgment directing County Surveyor Boyles to survey five leagues as vacant land belonging to the public free school fund, which five leagues are regarded as titled land by the General Land Office of Texas. The petitioner's averments in their entirety plainly disclose: first, that the five leagues were actually granted by Coahuila and Texas, acting by Commissioner J. Francisco Madero, on June 1, 1831, to Victor Blanco; and second, that from 1831 to 1924 the land has been claimed by no others than Victor Blanco, his heirs and assigns. The language of the petition on the second point is, that "no person or persons whomsoever are now claiming or have ever asserted any claim to said land or any part thereof,

except the claimants hereinbefore referred to," (meaning Blanco and those dereigning title under him). As to the first point, the petitioner repeatedly avers that Commissioner Madero did attempt to exercise the power to extend title to Blanco, and petitioner attacks the Commissioner's extension of title as void for want of knowledge or approbation of his act by the President of the Mexican Nation. The language of the petition necessarily implies that the public officials of all governments having jurisdiction over the five leagues have acquiesced in the claim of title by Blanco and his assigns for nearly one hundred years.

The sole real ground of attack made by the petition and in this Court on the title held under Blanco, or on the action of the Land Commissioner and of the County Surveyor, is that Commissioner Madero extended the title to Blanco, his sons, heirs, successors, and assigns, without knowledge, assent, or approbation of the Federal Executive of Mexico, as required by the governing Mexican law.

■ The Court, under its decisions for at least the last forty-five years, feels impelled to hold conclusive the presumption, under the facts admitted in plaintiff in error's petition, that Commissioner Madero was fully clothed with all necessary power to grant the five leagues to Blanco, were the power to be inferred alone from the nearly century-old open claim under the grant, completely acquiesced in, first by the officials of the Supreme Mexican Government, so long as it had jurisdiction over the area, and then successively by the officials of the Republic and of the State of Texas.

Whatever may have been the correct rule, as fixed by the earlier decisions, this Court has long spoken in no uncertain terms in presuming power in officials of former governments, exercising authority over the territory now within Texas, to make ancient grants, where their acts have stood unchallenged for periods comparable to those averred here.

In Texas-Mexican Ry. Co. v. Jarvis, 69 Texas, 527, 591, 7 S. W., 210, in an opinion of Mr. Justice Stayton, it was said:

"The court, in effect, found the facts as we have stated them, and thence held that the land was granted by the government of Spain in the year 1767, and was, therefore, not subject to location. The facts shown by the instrument to which we have before referred, show that all the steps necessary to the making of valid grants were taken, *except, it may be, that the acts of the subdelegates were confirmed by the viceroy.* If the instrument were entire this fact most probably, if it were

necessary to valid title, would appear; and, in view of the long possession and open assertion of title under it, and the failure of three governments for more than a century to deny the right asserted, *we are of the opinion that it must be presumed that valid grants were made as the defendants claim; and that the acts of the subdelegates were confirmed by the viceroy.* The rules applicable to this question are well settled, and there is nothing in the facts of this case to deny their application."

Chief Justice Gaines closed the Court's learned opinion in the case of Sheldon v. Milmo, 90 Texas, 22, 36 S. W., 413, by quoting with approval the declaration in Downing v. Diaz, 80 Texas, 436, 16 S. W., 49, to the effect that: "we may be permitted here to say that after so great a lapse of time, with our restricted means for acquiring correct information, it would not be just to assume that what was deemed sufficient evidence of right by the officers of the former government, who must be presumed to have been familiar not only with the general laws then in force but with the special laws and usages of the time, as well as the facts attending a particular transaction, is now entitled to no consideration."

To like effect was the Court's opinion by Chief Justice Phillips in the case of State of Texas v. Gallardo, 106 Texas, 284 to 286, 166 S. W., 369, wherein it is said:

"Apart from other questions in relation to the character of title conferred by the sale of November 9, 1836, the State urges the invalidity of that sale under the Mexican law *upon the ground, it is said, of the want of any authority in the Governor of Tamaulipas to order it in the absence of affirmative evidence of a previous approval by the supreme government.* This contention is based upon provisions of the law of October 3, 1835, enacted or decreed by the Mexican Assembly and certain regulations decreed by the President ad interim in its connection, particularly Regulation No. 13 to this effect:

" 'Until the attributes of the government and departmental boards in what relates to the Treasury are declared by law (which was not done until April 17, 1857), said Governors shall make no sale of lands (fincas) or property (bienes) nor contracts nor extraordinary expenses for said departments, without the previous approval of the supreme government.'

"It is further said that the Governor of Tamaulipas was without authority to make the sale under the Treasury regulations of the Mexican governments of July 20, 1831. It was this law of October 3, 1835, which reduced the Mexican States to the rank of departments, and transformed the Federal system

into a centralized government, denounced as an act of usurpation in the Texas Declaration of Independence. At this period Santa Anna had and used the power of a dictator in Mexico. The Act of the Assembly continued the Governors of the different States in office, subject to the supreme government of the nation. Whatever may have been the effect of the Treasury regulations of 1831, if any force be given to the regulations decreed by the President ad interim under the law of October 3, 1835, as is urged should be done, it must be conceded, we think, that under Regulation No. 13, above quoted, the power of the Governors of the States to make sales of land was distinctly recognized, *with only the limitation that until the attributes of the government and the departmental boards in relation to the Treasury were declared by law, the power should be exercised only upon the previous approval of the supreme government.* In ordering the sale in question the Governor of Tamaulipas acted in his official capacity and under purported authority. His act was but the exercise of a power, not denied to him but recognized by the regulation quoted. *The previous approval of the supreme government was necessary, it is true, to its exercise under the provisions of the regulation.* But the question that here arises is, *should it not be presumed after this long lapse of years, in the light of our knowledge of the conditions that then obtained in that country, that such previous approval of the sale by the supreme government was given? We think so,* under established principles in relation to the acts of public officers in their official capacity under purported authority, as to which legitimate rather than usurped authority is presumed. United States v. Peralta, 19 How., 343, 15 L. Ed., 78; Strother v. Lucas, 12 Pet., 410, 9 L. Ed., 1137; Texas Mex. Ry. Co. v. Jarvis, 69 Texas, 541, 7 S. W., 210. It would seem from the terms of the law of the Assembly and the edict of the President ad interim that during this period that official was, himself, the supreme government of the nation; and, as is well observed in the opinion of Chief Justice Key, it does not appear but that such approval was subject to be given in a purely informal manner. It is familiar knowledge that subsequent to the time in question, alcaldes, acting under the direction of the Governors, issued titles in various States of Mexico, and the validity of such titles has been recognized by that government; and, as we have before said, there was evidence in this case tending to show affirmatively that it had acquiesced in the validity of the title under this sale to that part of the land sold, lying on the southern side of the Rio Grande. The notorious

claim under the title, the long continued possession of the land in virtue of it and the acquiescence in its validity by distinct governments for the period of time here shown, all combine to warrant the presumption that such approval by the Mexican authorities as was necessary to the validity of this sale, was given. In one of his opinions in regard to the presumption of the issuance of a grant, Lord Kenyon speaks of a case being such as to justify the presumption of one hundred grants, if necessary to sustain the right; and that observation might justly be applied here so far as the case involves the question of the approval of this sale by the Mexican government."

■ In none of the cases cited is language found on the face of the grant which could be fairly construed as reciting an express approval by the supreme authority of the challenged act of a subordinate official. Here the grant or extension of title, in the translated copy of the testimonio, made part of plaintiff's petition, contains language which, considered in the light of nearly a century's acquiescence by all interested governments and parties, cannot be reasonably interpreted otherwise than as an express declaration that the Commissioner made the grant, or extended the title, "with the knowledge and approbation of his excellency, the President of the Republic" of Mexico. With plaintiff averring the facts furnishing the presumption of Madero's power to extend the title, no other judgment could be rendered than one upholding the acts of the Commissioner of the General Land Office and of the County Surveyor. 17 Texas Jurisprudence, sec. 309; Baldwin v. Goldfrank, 88 Texas, 249, 31 S. W., 1064.

Should we accept plaintiff in error's views, we should adjudge that the officials of no less than three governments, including our own Texas Commissioners of the General Land Office and Attorney General, have been derelict in duty during the periods of some three generations. Not a fact is averred at all sufficing to negative the presumption of the rightful exercise of official power as it is disclosed by plaintiff in error's own position.

Under all the facts alleged in plaintiff in error's petition, no other conclusion appears to us to be reasonable than that the land sought to be acquired by plaintiff in error had been titled land for nearly one hundred years, and ought to have been so treated by the Land Commissioner and the County Surveyor at the time of the various proceedings inaugurated by plaintiff. Whatever may have been requisite to confer the power exercised by Commissioner Madero must be presumed, under facts admitted

by plaintiff, including the consent of the Chief Executive of the Federal government. Hence, the petition was subject to general demurrer, and the judgments of the District Court and Court of Civil Appeals are affirmed.