John I. FOSTER, Jr., Appellant,

v.

GULF OIL CORPORATION et al., Appellees.

No. 6333.

Court of Civil Appeals of Texas.

Beaumont.

March 31, 1960.

Rehearing Denied April 27, 1960.

Will Wilson, Atty. Gen., Kelley, Looney, McLean & Littleton, Edinburg, for appellant.

Marcus, Weller & Evans, Orgain, Bell & Tucker, Beaumont, Williams, Lee & Lee, Houston, for appellees.

ANDERSON, Chief Justice.

This is a vacancy suit, brought pursuant to the provisions of Article 5421c, Vernon's Texas Civil Statutes. It involves a league of land in Jefferson County which was granted to Pelham Humphries by the State of Coahuila and Texas, Republic of Mexico, on February 14, 1835.

His application for a mineral lease on the land having been refused in 1953 by the Commissioner of the General Land Office, appellant brought suit for adjudication of the question as to whether the land is or is not vacant and unsurveyed school land. Gulf Oil Corporation and numerous other corporations and individuals, claimants of the land, were named as defendants. The Attorney General and the Commissioner of the General Land Office were also made

parties to the suit. The former, as required by the aforesaid statute intervened on behalf of the State. Special exceptions which the defendants urged to plaintiff's petition were sustained by the trial court; and when the plaintiff declined to amend, the suit was dismissed. The exceptions were to the effect that the petition itself affirmatively establishes that the land is not vacant and unsurveyed school land. The appeal is from the judgment of dismissal.

Appellant alleged in his petition that, pursuant to an application which was made on September 27, 1834, the land was granted to Pelham Humphries on February 14, 1835, and that it is described in field notes which were made for Humphries and which are on file in the General Land Office. He also alleged that, in rejecting his (appellant's) application for a lease on the land, the Commissioner of the General Land Office endorsed on it the following: "Rejected—No Vacancy—This area is covered by a titled grant."

To show that, despite its having been validly granted to Humphries, the land is vacant and unsurveyed school land, appellant alleged, in substance: 1) that on or about September 2, 1835, Pelham Humphries died intestate and that title to the land thereupon reverted to either the State of Coahuila and Texas or the Republic of Mexico and ultimately vested in the State of Texas; 2) that Pelham Humphries abandoned the land and that title to it thereupon reverted to either the State of Coahuila and Texas or the Republic of Mexico and ultimately vested in the State of Texas; 3) that, having first advertised it for sale, the Tax Assessor and Collector of Jefferson County sold and deeded the land to the State on December 27, 1850, in satisfaction of delinquent taxes, and that the State thereby acquired title to the land; 4) that, under an Act of February 10, 1852, title to the land became vested in the State through failure of its owner or owners to again file field notes for it in the General Land Office not later than August 31, 1853. Appellant did not allege that the grant to Humphries had been either cancelled or impaired by proceedings having to do directly with it.

The petition contains no forthright allegation that the land is or has been possessed by anyone, but does contain allegations from which possession by appellees, long continued, is to be inferred. We quote only two: "There is and has been for many years past production of some or all of the said minerals from said land, the exact nature and extent of which is unknown to the plaintiffs but well known to the defendants. * * * An inestimable quantity of the natural resources of the said land have been and are being taken and removed therefrom in derogation of the rights of the State."

The rulings of the trial court are believed to have been correct.

Unsurveyed land is defined by the statute as being "all areas not included in surveys on file in the General Land Office or surveys delineated on the maps thereof." Art. 5421c, Sec. 3. And a vacancy is defined as being "an area of unsurveyed school land not in conflict on the ground with lands previously titled, awarded, or sold, which has not been listed on the records of the Land Office as school lands and which on the date of the filing was neither subject to an earlier subsisting application to purchase or lease by a discoverer or claimant nor involved in pending litigation brought by the State to recover the same." Art. 5421c, Sec. 6(a).

The land in suit unquestionably became "titled" when it was granted to Humphries. Winsor v. O'Connor, 69 Tex. 571, 8 S.W. 519; Fielder v. Houston Oil Company, Tex.Com.App., 208 S.W. 158; Barrow v. Boyles, Tex.Civ.App., 21 S.W.2d 716, 719, affirmed 122 Tex. 416, 61 S.W.2d 783; Truehart v. Babcock, 49 Tex. 249; Westrope v. Chambers, 51 Tex. 178. Appellant concedes as much. And, as reflected by appellant's petition, field notes which were made for Humphries and which include the land are on file in the General

Land Office. Moreover, it is to be inferred from appellant's petition that the land is delineated on the maps of the Land Office. Unless, therefore, its status has changed since the grant to Humphries was made, the land clearly is not vacant and unsurveyed land within the purview of Article 5421c but is surveyed and titled land. Appellant contends, of course, that there has been a change of status, but he did not allege that either the survey that was made for Humphries or the grant that was made to Humphries has been either annulled or cancelled. To the contrary, his petition reflects that both are still recognized in the General Land Office as being valid and subsisting and that appellees are holding and claiming under them adversely to the State. We think this sufficient, regardless of the true state of the title, to show that, within the purview of Article 5421c, the land is surveyed and titled land and not vacant and unsurveyed land. See, generally, Barrow v. Boyles, 122 Tex. 416, 61 S.W.2d 783; Wright v. Nelson, Tex.Civ.App., 46 S.W. 261, er. ref.; Juencke v. Terrell, 98 Tex. 237, 82 S.W. 1025; Anderson v. Polk, 117 Tex. 73, 297 S.W. 219; Taylor v. Hoya, 9 Tex.Civ.App., 312, 29 S.W. 540; O'Keefe v. Robison, 116 Tex. 398, 292 S.W. 854. But if we should be in error in this respect, the rulings of the trial court were nonetheless correct.

Land was inheritable under the laws of Mexico and of Coahuila and Texas. 1 Gammel's Laws of Texas 314 (314), Constitution of Coahuila and Texas, Sec. 15; 1 Gammel's Laws of Texas 193 (303), Decree 190, Art. 31, April 28, 1832. No escheat because of death would have occurred, therefore, unless one died intestate and without heirs or successors. Appellant did not allege that Pelham Humphries died without legal heirs or successors, but only that he died intestate.

In support of his claim that title reverted to the sovereign because the land was abandoned, appellant relies upon a decree approved by the government of Coahuila and Texas on April 28, 1832, Decree 190, Art. 33, 1 Gammel's Laws 193 (303), which provided: "New settlers, who shall resolve to leave the state to establish themselves in a foreign country, shall be at liberty to do so with all their property, but after thus leaving they shall no longer hold their land; and should they not have previously disposed of the same, or should not the alienation be in conformity to Art. 19, it shall become entirely vacant." And it must be conceded that our courts recognize that, by virtue of such decree, an abandonment of the country without prior sale worked a forfeiture of a title to land. Holliman's Heirs v. Peebles, 1 Tex. 673, 699; Marsh v. Weir, 21 Tex. 97; Summers v. Davis, 49 Tex. 541. But appellant did not allege in his petition that Humphries abandoned the country, nor did he allege facts from which abandonment of the country might reasonably be inferred. In fact, his petition suggests that Humphries did not abandon the country.

Although not adverted to by appellant, our courts have also taken the position that the Spanish law, as set out in "De Partidas," applied to lands granted to colonist in the State of Coahuila and Texas; and under it, title was lost when one abandoned land—i. e., when one departed from land, with the intention that it should no longer be his. Allen v. West Lumber Co., Tex.Com.App., 244 S.W. 499, opinion adopted. It is possible, though improbable, that, under the liberal rules governing pleadings (particularly Rule 45, Texas Rules of Civil Procedure), abandonment of the land while it was still under the sovereignty of Mexico or of Coahuila and Texas was pleaded by appellant sufficiently to present the question of loss of title by Humphries under the Spanish law. But under that law, abandoned land became the property of the person who first entered upon it after it had been abandoned. We have made no research to ascertain what the status of title was between abandonment by one and entry

of another, but, for reasons about to be stated the matter is not of significant importance to the rulings with which we are concerned.

■ Granted that there was an escheat of the land if Humphries died intestate and without heirs in 1835, or that title was forfeited if he abandoned the land while it was still under the sovereignty of Mexico or of Coahuila and Texas; and assuming, for sake of discussion, that Humphries did so die or that he did abandon the land and even the country, and that appellant's petition sufficiently presented these matters, the status of the land has not under either theory been altered from that of surveyed and titled land, there having been no assertion of the escheat or forfeiture nor any regrant of the land prior to—nor since—the time at which the State of Texas came into being and its Constitution of 1845 was adopted, Vernon's Ann.St. Hancock v. McKinney, 7 Tex. 384, 455–456; Swift v. Herrera, 9 Tex. 263, 279–280; Barclay v. Cameron, 25 Tex. 233, 243; Sabriego v. White, 30 Tex. 576, 585.

■ As regards a tax title, appellant only alleged that, having first advertised it for sale, the Tax Assessor and Collector of Jefferson County sold and deeded the land to the State on December 27, 1850, in satisfaction of delinquent taxes; that there is no record of the land's having been redeemed; that by the deed the State acquired title to the land; and that there is no record of the State's having since parted with the title so acquired. He did not allege any of the additional facts he would have to prove in order to show that the State acquired title to the land as a result of the alleged summary sale. See 40 Tex.Jur., Taxation, Secs. 209–214, p. 290, et seq.; Calder v. Ramsey, 66 Tex. 218, 18 S.W. 502. And, as indicated, he did not forthrightly allege that the land was not redeemed, but only that there is no record of its having been redeemed. Having failed to plead compliance with the conditions precedent to the power of sale,

appellant failed to plead facts upon which to base a holding that the State regained title to the land by the tax deed. See 40 Tex. Jur., Taxation, Sec. 154, p. 221, Sec. 209, p. 280. And no presumption in favor of the power or authority to sell may be indulged. Such presumptions as arose under the tax laws of 1848 and of 1850 in favor of the validity and efficacy of a summary sale were only as to the regularity of the sale itself, not as to the power of sale. 3 Gammel's Laws of Texas, Act of March 20, 1848, Sec. 16, p. 196 (196), Act of Feb. 11, 1850, Sec. 18, p. 209 (647); Terrell v. Martin, 64 Tex. 121, 125–126; Yenda v. Wheeler, 9 Tex. 408; Robson v. Osborn, 13 Tex. 298, 307. And even those arose only after a deed was duly recorded. Recordation of the deed on which he relies was not alleged by appellant.

■ The remaining question is that of whether, under the Act of February 10, 1852, 3 Gammel's Laws 58 (936), the land reverted to the State because field notes for it were not again filed in the General Land Office not later than August 31, 1853. We hold that it did not. Since the land was validly granted while under the sovereignty of Mexico, the Act was inapplicable to it. State v. Gallardo, 106 Tex. 274, 166 S.W. 369, 372.

■ Appellant alleged the State to be the "legal owner" of the land, also that the land is "a part of the public domain of the State." And, as previously stated, he alleged that the State acquired title to the land by the tax deed. These, however, are but legal conclusions which, while perhaps not objectionable as a form of pleading (Rule 45, T.R.C.P.), cannot be permitted to control disposition of the case. Anderson v. Polk, 117 Tex. 73, 297 S.W. 219.

No reversible error having been presented, the judgment of the trial court is affirmed.

McNEILL, J., disqualified and not participating.